COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Complainant,

v.

Thomas J. HOFFMAN, Respondent.

No. 86–1794.

Supreme Court of Iowa.

March 18, 1987.

James E. Gritzner of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for complainant.

Verne Lawyer of Verne Lawyer and Associates, Des Moines, for respondent.

Considered by REYNOLDSON, C.J., and HARRIS, McGIVERIN, LAVORATO, and NEUMAN, JJ.

NEUMAN, Justice.

This matter is before the court for final disposition upon the recommendation of the Grievance Commission that the respondent be reprimanded for conduct violating the Iowa Code of Professional Responsibility for Lawyers. In accordance with Iowa Court Rule 118.10, we have reviewed de novo the record made before the commission. We agree with the commission's finding of misconduct and we concur in its conclusion that reprimand is the appropriate sanction.

Respondent Thomas J. Hoffman has been engaged in the general practice of law in LeMars, Iowa, since his admission to the bar in 1970. In February 1982 he suffered severe injuries to his head and upper body as the result of a collision between his automobile and a semitruck. Protracted litigation ensued and remained unresolved until a substantial verdict was rendered in respondent's favor in January 1986. The injuries he sustained are of a permanent nature, attended by continuing pain.

Uncontroverted evidence before the commission reveals that prior to the accident, respondent enjoyed a reputation among his colleagues as a competent, conscientious and ethical attorney. After the accident, however, these qualities became overshadowed by respondent's increasingly nervous, emotional and preoccupied attitude which eventually manifested itself in the unethical conduct established in this case.

The complaint before us centers on a series of nine letters authored by the respondent during a five-month period beginning in September 1985. Seven of the letters pertained to litigation involving Hoffman, personally, and members of his family against the city of LeMars in connection with the proposed construction of a sidewalk on their property; two others per-tained to the probate of the estate of Urban Kruse. All had in common a certain outlandish quality both in content and style. Additionally, the city officials, attorneys, and heirs who were the targets of the correspondence were all represented by or associated with another law firm in LeMars which brought the letters to the attention of the Committee on Professional Ethics and Conduct.

The irrationality of the correspondence is evident from the following excerpts. Respondent's letter to the mayor of LeMars concerning the sidewalk case threatened him with a claim for punitive damages of "$1,000,000 ... INDIVIDUALLY AND AS A PRIVATE PERSON ... based on a legal theory of CONSPIRACY TO DENY CIVIL RIGHTS." (Emphasis in the original.) A similar letter to the city administrator charged him with corrupt and illegal actions giving rise to a cause of action for "INTENTIONAL INFLICTION OF EMOTIONAL INJURY ON THE ELDERLY." (Again, emphasis in the original.) Each of these letters was admittedly written by respondent without the prior knowledge or consent of the attorneys representing the city in the sidewalk litigation. Soon they too became the object of respondent's correspondence. One attorney was advised in no uncertain terms that "any more extortion" on the part of the city would result in a $1,000,000 claim for "LEGAL MALPRACTICE" (emphasis in original) against him and his partners. In two other letters, the attorney's law partners were personally threatened with complaints to the state bar association based on their partner's alleged unethical behavior. A lengthy letter mailed to district judge Edwin Mitchell in response to his ruling on a motion filed in the Hoffman-LeMars litigation, criticized the judge's reasoning and outlined Hoffman's "great distaste and displeasure with what has been allowed to happen in this case."

In letters concerning the Urban Kruse estate, Hoffman accused an attorney of "hustling probate through the funeral homes ... as shysters do," thereby disrupt-

ing his former attorney-client relationship with the Kruse family. In a subsequent letter to one of the Kruse heirs, Hoffman spoke of "unethical lawyers" who are "interested only in money" and "who usually end up disbarred," in obvious reference to the same attorney. Inviting the heirs to contact him for an appointment, Hoffman wrote "I want to find out whether you want to be hustled by other lawyers or whether you want services in good faith for free, in honor of Urban."

In response to requests for admissions and in his personal testimony before the commission, Hoffman candidly and remorsefully admitted his authorship of the letters. Moreover, he did not contest the complainant's argument that the intemperate tone of these communications implicated a serious disregard for his ethical responsibilities as a lawyer. Based on all the evidence presented, the commission found the respondent in violation of the following ethical considerations and disciplinary rules: DR 1–102(A)(1), (5), (6) (engaging in conduct prejudicial to the administration of justice; engaging in conduct adversely reflecting on his fitness to practice law); EC 2–32 (a lawyer should decline employment if his intensity of personal feeling may impair his effective representation of a client); DR 2–103(A) (a lawyer shall not recommend employment of himself to a nonlawyer who has not sought his advice regarding employment of a lawyer); EC 7–22, 37 (respect for judicial rulings essential to the proper administration of justice; a lawyer should not make derogatory personal reference to opposing counsel); DR 7–104(A)(1) (prohibiting communication by a lawyer with a party known to be represented by counsel without counsel's consent); and EC 9–6 (a lawyer has a duty to uphold the integrity and honor of the profession).

■ We concur in the conclusions drawn by the commission, finding each violation to be supported in the record by the required standard of a convincing preponderance of the evidence. *See Committee on Professional Ethics & Conduct v. Davidson,* 398 N.W.2d 846, 856 (Iowa 1987). As for the appropriate sanction, we are also convinced that the commission's recommendation of reprimand is equally well-substantiated by the record.

By way of explanation, but not excuse, Hoffman offered persuasive evidence demonstrating that his behavior in the fall of 1985 was a physiological aberration traceable to the accident. Although he had substantially reduced his practice due to the physical pain and emotional stress associated with his injuries and the pending litigation, the evidence suggests he was unaware of the effect that prescription narcotics and amphetamines were having on his judgment.

■ We have repeatedly held that we will not excuse ethical misconduct because of an attorney's ill health, emotional problems, personality disorders or the general stress of a busy law practice. *See generally Committee on Professional Ethics & Conduct v. Vesole,* 400 N.W.2d 591, 592 (Iowa 1987); *Committee on Professional Ethics & Conduct v. Silver,* 395 N.W.2d 877, 878 (Iowa 1986); *Committee on Professional Ethics & Conduct v. Kelly,* 357 N.W.2d 315, 319 (Iowa 1984); *Committee on Professional Ethics & Conduct v. Millen,* 357 N.W.2d 313, 315 (Iowa 1984). We do not do so here. If Hoffman were continuing to display the kind of unprofessional conduct expressed in the letters at issue in this case, there would be just cause to order a suspension of his license in the interest of protecting the public and the integrity of the profession generally.

But the evidence in this case overwhelmingly suggests that the nine letters written were totally out of character for the respondent, either before the time in question or since. In all other facets of his practice he has demonstrated that he is a credit to the profession. As a lawyer, however, he had a duty to be sensitive to circumstances which might impair his judgment. For his failure to do so, we hereby reprimand him.

ATTORNEY REPRIMANDED.