**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS & CONDUCT, Complainant,**

v.

**George Richard APLAND, Respondent.**

**No. 99–630.**

Supreme Court of Iowa.

Sept. 9, 1999.

Norman G. Bastemeyer and David J. Grace, Des Moines, for complainant.

George Richard Apland, Ankeny, pro se, for respondent.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and SNELL, JJ.

SNELL, Justice.

This matter comes before the court from the Grievance Commission of the Iowa Supreme Court. On hearing, the Commission recommended a suspension of G. Richard Apland's license to practice law of not less than six months. Our review is de novo as provided by Iowa Supreme Court Rule 118.10. Upon consideration, we now suspend Apland's license to practice law for a minimum of two years.

The Commission found Apland in violation of several provisions of our Code of Professional Responsibility for Lawyers. They are: DR 9–101(C) (implying an ability to influence improperly or upon irrelevant grounds any tribunal or public official); DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit or misrepresentation); DR 1–102(A)(5) (conduct that is prejudicial to the administration of justice); and DR 1–102(A)(6) (conduct that adversely reflects on the fitness to practice law).

We are convinced that the charges made by the Board are established by a convincing preponderance of the evidence. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Mayer*, 570 N.W.2d 647, 648 (Iowa 1997). We also believe that the

violations here require a suspension for a substantial period of time.

At the time of these transgressions, Apland was residing in Polk County and his license was under suspension for not complying with the continuing legal education and client security requirements. He had also been publicly reprimanded in 1998 for violating DR 9–102(B)(3) (failure to account to a client for a fee) and DR 1–102(A)(5) (failure to respond to complaints filed with the County Grievance Commission and the Board of Professional Conduct).

Apland's misconduct stems largely from his displeasure with the relationship between his ex-wife, Kathryn Apland (Kate), and his former client, George Ensley. His anger resulted in his embarking on a course of harassment, threats, misrepresentations, and outright lies.

On November 22 or 23, 1997, Apland and his second wife, An, drove Deborah Ensley, the ex-wife of George Ensley, to Kate Apland's home where they waited for hours for signs of George and Kate's return. At some point, Deborah entered Kate's home without permission and wrote derogatory remarks on the windows of George's car, which had been parked out front. Deborah testified that during this incident, Apland asked her if she wanted a gun. The Commission found that the Complainant Board had not proven that Apland had a gun or had encouraged Deborah to shoot George or Kate, but did prove that these events amounted to harassment by Apland of George and Kate. We agree.

When questioned whether he ever threatened to kill his ex-wife, Apland responded "No, not directly." He admitted, though, that during their twenty-six-year relationship and twenty-year marriage, statements were made by both that could be interpreted as threats. Exhibit 7, a tape recording, documents Apland as referring to Kate and saying "when I blow her head off" and "I'm going to cause more pain than anybody has calculated." In the same recording he said he did not care about losing his license to practice law. The Commission found as a fact that Apland had threatened to kill his ex-wife.

Another incident occurred on or about November 23, 1997. George Ensley was driving his car northbound on Interstate 35. Apland pulled his vehicle directly in front of him, slammed on the brakes, lost control and drove onto the median to the left. Ensley was narrowly able to avert a collision by slamming on his own brakes. Apland claimed to have experienced a flat tire that caused him to veer off the road. The Commission did not find Apland's version credible holding that his actions constituted harassment and an assault on Ensley.

As further evidence of a pattern of harassment, the Commission observed that Apland made at least ten, and as many as thirty, phone calls to George Ensley. Two additional calls, which served as the basis for many of the charges against Apland, were placed on November 25, 1997. The first was to Daryl Johnson, Ensley's insurance agent. At that time Apland told Johnson: that he was an attorney who represented himself; that he formerly represented George Ensley; that Ensley had committed arson; that Johnson was guilty of complicity in obtaining insurance money for the fire that destroyed Ensley's Ogden photography studio; and that he would get Johnson immunity if he cooperated with the investigating officials.

The second telephone call was to Loren Nalean who was George Ensley's friend as well as his former attorney. In that conversation Apland told Nalean that: (1) George Ensley had recounted to him that he intended to, and did, start the fire in his studio; (2) that Apland was attempting to have the authorities investigate George Ensley; (3) that Apland had influence with the authorities; and (4) that Apland's actions might get him disbarred.

During the course of these conversations Apland asserted that he was an attorney

when in fact his license was under suspension, that he could grant Daryl Johnson immunity from prosecution when he was neither authorized nor in a position to make such an offer, and that he had spoken with the state fire marshal, representatives of the DCI, FBI, and IRS, that they owed him favors and that he was directing these agencies in the investigation of Ensley. The Commission ruled that these claims were false and that Apland was implying that he could improperly influence the public officials involved with these agencies, in violation of DR 9–101.

The Commission also found Apland guilty of dishonesty, fraud, deceit and misrepresentation because he held himself out to the public as an attorney and because he maliciously accused George Ensley of arson. Moreover, the Commission disbelieved Apland's claims that a flat tire caused his near collision with Ensley's car, and that he was at his ex-wife's house with Deborah Ensley to prevent trouble. These actions violate DR 1–102(A)(4). *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Alexander,* 574 N.W.2d 322, 326 (Iowa 1998) (holding attorney's misrepresentation of the mailing date of a letter and the nature of her conversation with a police officer violated this rule); *Committee on Prof'l Ethics & Conduct v. Conzett,* 476 N.W.2d 43, 45 (Iowa 1991) (holding that fabrication of a false settlement offer was a violation of DR 1–102(A)(4)).

The Commission further concluded that Apland threatened to kill his ex-wife, tormented her and may have stalked her. He also harassed George Ensley on numerous occasions. Testimony was elicited indicating Apland may be subject to substance abuse but no finding was made on this matter. In any event, the Commission noted that we have held that personal and emotional problems are no excuse for unethical behavior. *Committee on Prof'l Ethics & Conduct v. Barrer,* 495 N.W.2d 756, 759 (Iowa 1993).

On the charge of conduct prejudicial to the administration of justice, failure to respond to the Committee's inquiries concerning complaints is itself an ethics violation. *Committee on Prof'l Ethics & Conduct v. Jones,* 441 N.W.2d 370, 372 (Iowa 1989). The Commission ruled that although Apland responded to the Board of Professional Conduct's discovery requests, he did not answer the complaint submitted to the Board in a timely manner.

The Commission's findings are well supported by the evidence. Apland argued that because his license to practice law was suspended, he was not governed by our disciplinary rules. He declared that he would have acted differently, had he thought that our rules applied to him. We find that even if this were true, it provides no defense. Apland should have known of our rules' applicability. In any event, his behavior demonstrates a gross disregard for our standards of professional conduct as well as an indifference to our civil and criminal laws. His own words show that he knew his conduct might jeopardize his license to practice law, yet he proceeded undeterred.

Apland attributes his disinterest in practicing law or preserving his license to events that transpired during a very depressed period in his life. He claims that his anger and comportment with respect to George Ensley and his former wife Kate were prompted by his concern for the welfare of his son, whom he felt was being harmed by their aberrant or immoral lifestyle. He further denies making reference to, or having ownership or possession of, a gun.

Apland asserts, without denial by the Board of Professional Ethics and Conduct, that he has fulfilled the requirements for continuing legal education through 1999. When asked by a Commission member about his plans, he stated that he did not intend to engage in private practice and

stated nothing specific as to how he intended to use his law license if reinstated.

We view Apland's numerous acts of professional misconduct as serious offenses. We have also considered that Apland's license was under suspension at the time of his actions and that he had been publicly reprimanded for another offense.

Accordingly, we suspend Apland's license to practice law indefinitely with *no* possibility of reinstatement for a period of two years from the date of this opinion. Costs of this action are assessed against Apland pursuant to Iowa Supreme Court Rule 118.22.

**LICENSE SUSPENDED.**