# IN THE SUPREME COURT OF IOWA

No. 10–0912

Filed April 8, 2011

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**RICHARD R. SCHMIDT,**

Respondent.

---

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

The Grievance Commission of the Supreme Court of Iowa filed a report recommending respondent's license be suspended for six months. **LICENSE SUSPENDED.**

Charles L. Harrington and Elizabeth E. Quinlan, Des Moines, for complainant.

Mark McCormick of Belin McCormick, P.C., Des Moines, for respondent.

**WIGGINS, Justice.**

The Iowa Supreme Court Disciplinary Board filed a complaint alleging the respondent, Richard R. Schmidt, violated ethical rules by communicating with a represented party without the consent of opposing counsel or a court order and by engaging in domestic abuse. The grievance commission found Schmidt's conduct violated provisions of the Iowa Rules of Professional Conduct and recommended Schmidt's license be suspended for six months. Having considered the record, we agree Schmidt committed ethical violations. We disagree, however, with the commission's sanction recommendation; therefore, we suspend his license to practice law in Iowa for thirty days.

**I. Scope of Review.**

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Axt*, 791 N.W.2d 98, 101 (Iowa 2010). The board has the burden of proving an attorney's ethical misconduct by a convincing preponderance of the evidence. *Id.* "This burden is less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett,* 674 N.W.2d 139, 142 (Iowa 2004). We are not bound by the commission's findings and recommendations, but we give them respectful consideration. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lustgraaf*, 792 N.W.2d 295, 297 (Iowa 2010). We give particular weight to the commission's assessments of witnesses' credibility. *Id.* at 299. Upon proof of misconduct, we may impose a greater or lesser sanction than the sanction recommended by the commission. *Axt*, 791 N.W.2d at 101.

## II. Proceedings.

On April 13, 2009, the board filed its complaint against Schmidt. In count I, the complaint alleged Schmidt violated Iowa Rules of Professional Conduct 32:8.4(b), which prohibits misconduct reflecting adversely on a lawyer's fitness to practice law, and 32:8.4(d), which prohibits misconduct prejudicial to the administration of justice, in connection with his commission and conviction of aggravated misdemeanor domestic abuse crimes against his wife. In count II, the complaint claimed Schmidt violated rule 32:8.4(d), as well as rule 32:4.2(a), which prohibits communication with a represented party without the opposing party's consent or a court order. The board claims the violation occurred when Schmidt, or his representative at his direction, was involved in assisting his client in personally obtaining the opposing party's signature on a consent decree when such actions violated a no-contact order and opposing counsel did not consent to the actions nor did a court order permit them.[1]

In its report, the commission found Schmidt committed the alleged ethical violations. The commission also recommended a six-month suspension.

## III. Findings of Fact.

On our de novo review, we find the facts as follow.

**A. General Background.** Schmidt was born and raised in Des Moines, Iowa. He attended Iowa State University. In May 1994 Schmidt graduated from Drake Law School and began private practice in

---

[1]Also in connection with counts I and II, the board alleged, and the commission found, violations of rule 32:8.4(a), which prohibits misconduct in violation of the rules of professional conduct. We do not consider a violation of this rule as a separate ethical infraction, and so we give it no further consideration. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 769 (Iowa 2010).

the areas of family law, personal injury, and workers' compensation. Schmidt currently practices in Des Moines in a four-lawyer group of sole practitioners.

**B. Prohibited Communication with a Represented Party.** In November 2005 Schmidt filed a petition for dissolution of marriage for a wife. Attorney Mason J. Ouderkirk represented the husband. The district court entered several orders, including one continuing a no-contact order between the husband and wife. Schmidt sent Ouderkirk a consent decree that Schmidt's client wanted her spouse to sign. Ouderkirk presented the consent decree to the husband. The husband rejected it. During the course of the representation, Schmidt filed several applications to show cause as to why the husband was not in violation of the no-contact order.

On May 26, 2006, the husband called Ouderkirk to inform him that he and his wife had come to an agreement and Ouderkirk should be receiving a revised consent decree. The same day, the wife called Schmidt, requesting he prepare the same consent decree he had previously prepared and informing him that her husband would probably terminate Ouderkirk's representation. Schmidt, either personally or through a representative in his law office acting upon his direction, changed the consent decree to indicate the husband was pro se, removing references to Ouderkirk's representation from the decree. The wife then picked up the consent decree and took it to her husband. Both parties signed the decree before a notary public. Schmidt then signed the decree.

After the decree was signed, Schmidt faxed it to Ouderkirk's office. After reviewing the decree, Ouderkirk told Schmidt he found the

situation unusual and noted Schmidt had stated the husband was pro se when he knew Ouderkirk was the attorney of record.

Ouderkirk contacted his client, informing him the decree had all the provisions to which the husband had previously objected to, the decree was unfair to the husband, and Ouderkirk did not approve of the decree. Ouderkirk then informed the husband that the husband had to decide whether he wished to continue with the proceedings or agree to the decree. The husband contacted Ouderkirk and stated he did not want to continue with the proceedings.

On May 31 Ouderkirk filed an application to withdraw and Schmidt filed a dismissal of the application to show cause why the no-contact order had not been violated by the husband. In June 2006 the court granted Ouderkirk's motion to withdraw and filed the consent decree.

**C. Domestic Abuse.** On June 6, 2006, the incident of domestic abuse by Schmidt of his wife occurred. Prior to June 6 Schmidt had never been violent toward his wife. Moreover, Schmidt had never acted with violence toward anyone else.

Schmidt's marriage was tumultuous. In 1997 Schmidt began seeking therapeutic assistance for problems in his marriage. He started taking doctor-prescribed medications, including medications for depression, consisting of Prozac, Wellbutrin, and Effexor. On June 6 Schmidt was taking Effexor. For about two and one-half years prior to June 6, Schmidt did not share a bedroom with his wife, but slept in the basement of the couple's home. In Spring 2006 Schmidt's wife informed him that she intended to leave him.

In August 2005 Schmidt attempted suicide, but failed. After this attempt, Schmidt sought psychiatric care. In August 2006 Schmidt

began seeing Dr. Easton, a psychiatrist. Also after his suicide attempt, Schmidt began seeing P.J. McDonald, a licensed independent social worker and marriage and family therapist. Schmidt continues to see both practitioners.

On the evening of June 6, 2006, Schmidt and his wife began arguing about childcare issues. They were on the concrete patio near their hot tub. When his wife walked away from the argument, Schmidt grabbed her and threw her down, causing her to hit her head. Schmidt then began to choke her, and she temporarily lost consciousness. Schmidt then chased her around the house, choking her two more times into unconsciousness. At some point, Schmidt let her up and she fled the house, running to a neighbor's house. Schmidt followed.

Schmidt attacked his wife again in the neighbor's kitchen as she tried to call 911. Eventually, the couple began running through the neighbor's garage. The neighbor, who was in his backyard, went to his garage after hearing screaming coming from the garage. The neighbor asked Schmidt what happened, and Schmidt said his wife had fallen in the hot tub, hitting her head. The neighbor went to the kitchen, and found the 911 dispatcher still on the line. The dispatcher said help was on the way. Throughout the entire incident, the couple's children watched and chased them. They screamed and cried for Schmidt to stop.

A Polk County sheriff's deputy arrived at the neighbor's house. The deputy put Schmidt in the patrol car so he could assist Schmidt's wife. When he returned to the car, he found Schmidt had broken the screen or "steel cage" between the front and back seats and had moved the deputy's cell phone. Upon the deputy's inquiry, Schmidt said he had to use the cell phone to make some calls.

Schmidt's wife was taken to the emergency room and was seen by a physician. The physician found she was in moderate distress, with abrasions to her neck, a three-centimeter-long head laceration, and abrasions on her nose and knees. Further examination revealed pain and stiffness of the neck, consistent with strangulation.

As a result of this incident, Schmidt pleaded guilty to two aggravated misdemeanors involving domestic abuse crimes. In March 2007 Schmidt was sentenced to incarceration for one year with all but thirty days suspended. The no-contact order prohibiting Schmidt from contact with his wife and children was ordered to remain in full force through March 2012, unless modified by a court order.

In November the couple's marriage was dissolved. In connection with the dissolution proceeding, the no-contact order was modified to permit Schmidt two supervised visitations with his children. The children were too traumatized to visit with Schmidt, and therefore, Schmidt has not seen his children since June 6, 2006.

In addition to the physical injury she sustained, Schmidt's wife lost thirty pounds, was off work for months, undertook intensive counseling, experiences flashbacks, and fears Schmidt. The children were also harmed. The children exhibit symptoms of anxiety, especially when separated from their mother. They have trouble in crowds, unfamiliar surroundings, and staying the night at friends' houses. At least one child has trouble sleeping, has stomach problems, and is on an antidepressant. They have been in counseling.

Even before the disposition of his criminal case, Schmidt began intensive rehabilitative efforts, attending a ten-day program pertaining to therapeutic approaches to change destructive behaviors at a retreat in Arizona; a domestic abuse and intervention program at the West Central

Mental Health Center; parent enrichment classes sponsored by the Child Abuse Prevention Council; and a five-week program in anger management that the children's therapist recommended. Schmidt continues counseling with McDonald and Dr. Easton. He has adopted a rigorous exercise regime and has improved his depressive state to the point where he is no longer on medications.

Schmidt takes responsibility for his actions and is remorseful. McDonald expressed surprise, noting that the incident was "out of character" for Schmidt and an "aberration." Even the district court judge who sentenced Schmidt for his aggravated misdemeanors stated that the acts "are most accurately described as an aberration in [Schmidt's] life and do not seem likely to be repeated by" him. We agree with this assessment. We also agree with the commission's finding that Schmidt's conduct has not affected his behavior toward his clients, fellow lawyers, and judges.

### IV. Ethical Violations.

**A. Violation of Rule 32:4.2(a).** Rule 32:4.2(a) provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Iowa R. Prof'l Conduct 32:4.2(a). In *Iowa Supreme Court Attorney Disciplinary Board v. Gailey*, 790 N.W.2d 801 (Iowa 2010), we recently had occasion to interpret this rule. In *Gailey*, we noted that the language of rule 32:4.2(a) is substantially similar to our prior disciplinary rule, DR 7–104(A)(1). *Gailey*, 790 N.W.2d at 806. DR 7–104(A)(1) stated:

> (A) During the course of representing a client a lawyer shall not:

> (1) Communicate or cause another to communicate on the subject of the representation with a party known to be represented by a lawyer in that matter except with the prior consent of the lawyer representing such other party or as authorized by law.

We then observed that we

> have interpreted our prior rule to prohibit an attorney from communicating with an adverse party represented by counsel concerning litigation or a transactional matter unless the attorney for the adverse party gives the opposing attorney permission to talk to the adverse party.

*Id.* We held that we should interpret rule 32:4.2(a) in the same manner we interpreted DR 7–104(A)(1). *Id.*

The record shows Schmidt, or one of his representatives at Schmidt's direction, prepared the consent decree by removing opposing counsel's name and indicating the husband was proceeding pro se. Schmidt, or one of his representatives at his direction, then gave the consent decree to the wife so that she could personally take it to her husband to sign. The record also indicates that opposing counsel objected, showing Schmidt did not have opposing counsel's consent to act as Schmidt did. These facts establish that Schmidt engaged in a prohibited communication and violated rule 32:4.2(a). Moreover, Schmidt cannot circumvent rule 32:4.2(a) by having his client do what he cannot do, especially when a no-contact order exists prohibiting the parties from contacting each other. Schmidt aided and abetted his client's violation of that order. *See id.* at 807 (recognizing, "a lawyer should not aid or abet a party to ignore a no-contact order").

The purpose underlying rule 32:4.2(a) is the same as that of DR 7–104(A)(1). The rule protects the represented party from the imbalance of legal skill and acumen between the lawyer and that party. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Herrera*, 626 N.W.2d 107, 113 (Iowa

2001). The rule "promotes the integrity of the attorney-client relationship and serves to prevent a variety of overreaching." *Id.* at 113–14.

**B. Violations of Rule 32:8.4(b).** Rule 32:8.4(b) provides, "It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Iowa R. Prof'l Conduct 32:8.4(b). We recently interpreted rule 32:8.4(b) in *Iowa Supreme Court Attorney Disciplinary Board v. Templeton,* 784 N.W.2d 761 (Iowa 2010). In *Templeton* we stated, "The mere commission of a criminal act does not necessarily reflect adversely on the fitness of an attorney to practice law." *Templeton,* 784 N.W.2d at 767 (citing 2 Geoffrey C. Hazard, Jr. et al., *The Law of Lawyering* § 65.4, at 65-8 to 65-9 (3d ed. 2009 Supp.) [hereinafter *The Law of Lawyering*]). "One's fitness to practice law . . . is determined by more than one's competency in legal matters. It includes one's [moral] character and one's suitability to act as an officer of the court." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Mulford,* 625 N.W.2d 672, 683 (Iowa 2001).

In assessing whether rule 32:8.4(b) has been violated, we look to "[t]he nature and circumstances of the act . . . to determine if the commission of the criminal act reflects adversely on the attorney's fitness to practice law." *Tempelton,* 784 N.W.2d at 767. There cannot be too much attention focused on the moral quality of the conduct; instead, the court must focus on the link between the conduct and the actor's ability to function as a lawyer. *The Law of Lawyering* § 65.4, at 65-8. Whether an attorney is fit to practice law encompasses whether the attorney "can be trusted to represent clients vigorously and without overreaching," and maintain a professional relationship. *Id.* at 65-9. Whether an attorney is

fit to practice law also depends on whether his conduct manifests "character defects calling into question the wisdom of trusting the lawyer with important controversies and confidential information." *Id.* at 65-9 to 65-10. Pertinent considerations in determining a rule 32:8.4(b) violation include:

> "the lawyer's mental state; the extent to which the act demonstrates disrespect for the law or law enforcement; the presence or absence of a victim; the extent of actual or potential injury to a victim; and the presence or absence of a pattern of criminal conduct."

*Templeton*, 784 N.W.2d at 767 (quoting *In re Conduct of White*, 815 P.2d 1257, 1265 (Or. 1991)).

An act that signals the characteristic of intemperance is considered to be an act that reflects adversely on a lawyer's fitness to practice law. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Steffes*, 588 N.W.2d 121, 124 (Iowa 1999) ("When an attorney's conduct cannot fairly be characterized as temperate and dignified and crosses the line into professional impropriety, such conduct reflects adversely on the attorney's fitness to practice law."). We have found violations of rule 32:8.4(b) for acts of violence. *See, e.g., Axt*, 791 N.W.2d at 101–02; *see also Comm. on Prof'l Ethics & Conduct v. Wilson*, 270 N.W.2d 613, 615 (Iowa 1978) (disciplining respondent for intemperate conduct of assault on another attorney under former Canon 1 of our prior Iowa Code of Professional Responsibility for Lawyers).

We note that not all acts of violence will lead to discipline. *The Law of Lawyering* § 65.4, at 65-8 to 65-9. For example, a lawyer who becomes involved in an isolated incident of assault and battery while drunk, "might well be considered unlikely to commit such a violent outburst in his professional life," and thereby not be subject to

discipline. *Id.* at 65-9. "On the other hand, a lawyer who, nursing a grudge of some kind, deliberately assaulted another would manifest character defects calling into question the wisdom of trusting the lawyer with important controversies and confidential information," and thereby be subject to discipline. *Id.* at 65-9 to 65-10; *see also In re Johnson*, 471 P.2d 269, 271 (Ariz. 1970) ("Isolated, trivial incidents of [assault] not involving a fixed pattern of misbehavior find ample redress in the criminal and civil laws. . . . [Such incidents arise] out of the infirmities of human nature. They are not the appropriate subject matter of a solemn reprimand by this Court."); *White*, 815 P.2d at 1265 ("For example, a misdemeanor assault arising from a private dispute would not, in and of itself, violate [a disciplinary] rule.").

We turn now to an application of the *Templeton* considerations. Schmidt's acts of violence were more than trivial. As to Schmidt's mental state, he and his wife were having marital problems for a number of years. Over that time, he chose to remain hostile to his wife, rather than end his relationship. At the time of the assaults, he made the conscious decision to act on this hostility and assault his wife multiple times, rather than walk away from the situation. Schmidt's depression does not excuse the choices he made, especially as there was no evidence submitted that this mental condition clouded Schmidt's judgment in any manner. No legal justification, excuse, or defense exists for Schmidt's commission of these acts.

Several actions by Schmidt indicate disrespect of the law or law enforcement. Schmidt prevented his wife from calling 911 and tried to prevent his neighbor from doing the same by lying to him about what had occurred; he broke the steel cage in the police car and then used the police officer's cell phone without permission. The finding of a violation

of rule 32:8.4(b) is also supported by the presence of victims, Schmidt's wife and his children. His wife was physically and mentally injured, and the children were traumatized. The only consideration weighing in favor of finding Schmidt's conduct was not a violation of the rule is the lack of a pattern of criminal conduct. In light of this analysis, we find Schmidt violated rule 32:8.4(b) with his acts of domestic abuse.

**C. Violations of Rule 32:8.4(d).** Schmidt violated rule 32:8.4(d) when he communicated with a represented party without opposing counsel's consent, but not when he engaged in private acts of domestic violence. Rule 32:8.4(d) provides, "It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice." We have defined conduct prejudicial to the administration of justice to be acts that hamper " 'the efficient and proper operation of the courts or of ancillary systems upon which the courts rely' " by violating the well-understood norms and conventions of the practice of law. *Templeton*, 784 N.W.2d at 768 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Howe*, 706 N.W.2d 360, 373 (Iowa 2005)); *accord Steffes*, 588 N.W.2d at 123.

1. *Prohibited communication with a represented party.* With regard to Schmidt's communication with a represented party without opposing counsel's consent, the record establishes that Schmidt hampered opposing counsel's representation of the husband so thoroughly that opposing counsel was forced to withdraw from representation because he believed the consent decree hurt the husband's interests. This conduct violates rule 32:8.4(d), as it constitutes the type of overreaching that our ethical rules are meant to prevent in protecting the integrity of the attorney-client relationship. *Herrera*, 626 N.W.2d at 113–14 (discussing DR 7–104(A)(1), now found in rule 32:4.2(a)).

Further, we stated in *Gailey* that,

> [i]n order for our system of justice to work, attorneys should counsel their clients to abide by court orders. It is outside the well-understood norms and conventions of the practice of law for a lawyer to aid and abet the violation of a no-contact order . . . .

*Gailey*, 790 N.W.2d at 807. When Schmidt prepared the consent decree for the wife to take to her husband, such actions violated the no-contact order in the case, thereby resulting in a violation of rule 32:8.4(d).

2. *Domestic abuse.* We have held that, when the basis of a domestic abuse conviction results from personal conduct that is unrelated to the practice of law, no violation of rule 32:8.4(d) occurs. *Axt*, 791 N.W.2d at 102. We have such a case before us; especially given our finding that the domestic abuse did not affect Schmidt's relationships with his clients, fellow lawyers, and judges. Thus, the board has failed to prove this alleged ethical violation.

**V. Sanction.**

" 'There is no standard sanction for a particular type of misconduct, and though prior cases can be instructive, we ultimately determine an appropriate sanction based on the particular circumstances of each case.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ackerman*, 786 N.W.2d 491, 497 (Iowa 2010) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 774 N.W.2d 301, 308 (Iowa 2009)). In tailoring the sanction to the particular circumstances of each case,

> "we consider the nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances."

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey,* 761 N.W.2d 53, 61 (Iowa 2009) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ireland,* 748 N.W.2d 498, 502 (Iowa 2008)).

In the past, attorneys have been admonished for violations of ethical rules prohibiting communications with represented parties. *Comm. on Prof'l Ethics & Conduct v. Zimmermann,* 522 N.W.2d 619, 621 (Iowa 1994). Unlike a public reprimand, an admonition does not amount to discipline. *Id.* We have also disciplined attorneys for violating ethical rules prohibiting communications with represented parties. Sanctions have ranged from public reprimands, suspensions of law licenses, and revocation of law licenses. *See, e.g., Gailey,* 790 N.W.2d at 808 (imposing sixty-day suspension of license of respondent with two incidents of prior discipline for aiding and abetting client's violation of a no-contact order and offering witness an inducement to testify that is prohibited by law); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Box,* 715 N.W.2d 758, 765 (Iowa 2006) (imposing a public reprimand on respondent with no prior disciplinary record when prohibited communication resulted in substantial harm; rejecting request to privately admonish respondent); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sullins,* 556 N.W.2d 456, 457 (Iowa 1996) (imposing a public reprimand on respondent for direct contact with child witness in child abuse proceedings when respondent knew lawyer would soon be appointed for child and refusal to respond to ethical committee's inquiries on an unrelated matter); *Comm. on Prof'l Ethics & Conduct v. Shepler,* 519 N.W.2d 92, 93 (Iowa 1994) (revoking respondent's license for intentionally taking advantage of elderly woman with diminished capacity by obtaining her signature on three subordination agreements after being told woman would not subordinate her interest in property,

as well as by failing to contact woman's lawyer concerning any business dealings after being told to do so); *Comm. on Prof'l Ethics & Conduct v. Hoffman*, 402 N.W.2d 449, 451 (Iowa 1987) (imposing a public reprimand on respondent whose nine intemperate letters involved some persons known to be represented by counsel).

Attorneys also have been admonished for first offense domestic violence. *Axt*, 791 N.W.2d at 100 (indicating that respondent was admonished for committing his first offense of domestic abuse assault against his wife and for resisting arrest while intoxicated). Again, this does not amount to discipline. *Zimmermann*, 522 N.W.2d at 621. In light of our determination that domestic abuse violence is a "reprehensible crime," we now find that admonishment for such acts to be inappropriate. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Polson*, 569 N.W.2d 612, 613 (Iowa 1997). Under circumstances where admonitions have been found sufficient for committing domestic abuse assault, we now hold that the more appropriate disposition is to at least impose the discipline of a public reprimand.

In one nondomestic assault case involving other serious misconduct, we imposed a two-month suspension. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Thompson*, 595 N.W.2d 132, 135–36 (Iowa 1999) (imposing two-month suspension on respondent's license for conviction of assault and criminal trespass). As to our prior domestic abuse cases, we have imposed the discipline of suspension ranging from three months to two years, depending on the nature and extent of other misconduct proved by the board in the same case. *See, e.g., Axt*, 791 N.W.2d at 102–03 (imposing two-year suspension of respondent's license with prior record of discipline for second offense domestic abuse assault and multiple violations of a court's no-contact order); *Iowa Supreme Ct.*

*Bd. of Prof'l Ethics & Conduct v. Ruth*, 636 N.W.2d 86, 89 (Iowa 2001) (imposing six-month suspension of respondent's license for domestic abuse and OWI-third offense convictions); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Apland*, 599 N.W.2d 453, 454–56 (Iowa 1999) (imposing two-year suspension on respondent's license for "embarking on a course of harassment, threats, misrepresentations, and outright lies" toward his ex-wife and representing himself to be an attorney when his license was under suspension); *Polson*, 569 N.W.2d at 613–14 (imposing two-year suspension on respondent's license for conviction of domestic abuse causing injury and thirty-one violations of a protective order); *Comm. on Prof'l Ethics & Conduct v. Lapointe*, 415 N.W.2d 617, 620 (Iowa 1987) (imposing fourteen-month suspension on respondent's license for convictions of assault on his girlfriend and tampering with a witness); *Comm. on Prof'l Ethics & Conduct v. Patterson*, 369 N.W.2d 798, 799, 801 (Iowa 1985) (imposing three-month suspension on respondent's license for conviction of domestic assault lasting two hours where photographs "taken the following day show a badly disfigured and battered woman, a dramatic testimonial to respondent's eighteen-month instruction in the martial arts"). The common thread in these assault cases in which we imposed a suspension is that the attorney also committed other serious misconduct.

The mitigating circumstances present include the following. First, Schmidt has no prior record of discipline. *Lustgraaf*, 792 N.W.2d at 301–02 (considering prior ethical practices in fashioning sanction). Second, Schmidt suffered from clinical depression and he has received in-depth treatment for his depression and domestic abuse. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Fields*, 790 N.W.2d 791, 799–800 (Iowa 2010) (considering depression a mitigating circumstance and noting

respondent's "efforts to get healthy must be considered in fashioning an appropriate sanction"). Third, Schmidt takes responsibility for his actions and is remorseful. *Id.* at 799 (noting respondent "acknowledged his misconduct and has not attempted to shift blame for his actions"). Fourth, the incident of domestic abuse was out of character for Schmidt and an aberration. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carpenter*, 781 N.W.2d 263, 271 (Iowa 2010) (noting imposition of public reprimand was appropriate when ethical violation was an isolated incident involving client trust account violations). Fifth, Schmidt's domestic-abuse conduct did not affect his behavior toward his clients, fellow lawyers, or judges. *Axt*, 791 N.W.2d at 102 (holding no violation of rule 32:8.4(d) occurred because the domestic abuse did not occur within the context of respondent's practice). Finally, the mere act of communicating with a represented party without opposing counsel's consent is normally not an offense requiring suspension of an attorney's license. *Box*, 715 N.W.2d at 765 (imposing a public reprimand on respondent with no prior disciplinary record for communicating with a represented party without opposing counsel's consent); *Sullins*, 556 N.W.2d at 457; *Hoffman*, 402 N.W.2d at 451. While none of these mitigating circumstances excuse Schmidt's conduct, they nevertheless constitute factors that we take into account in imposing less severe discipline. *Fields*, 790 N.W.2d at 799–800 (recognizing mitigating circumstances do not excuse conduct, but are considered in fashioning discipline).

Acts of domestic abuse committed by attorneys are serious and will not be tolerated by this court. Schmidt's acts were not trivial. He had no legal justification or defense for his actions. His actions are especially egregious, not only because his conduct caused substantial harm to his spouse and his children, but also because he attempted to prohibit his

spouse from contacting the authorities and, when apprehended, he displayed a disregard towards the police by breaking the screen between the front and back seats of the police vehicle. Generally, these circumstances would require us to suspend Schmidt's license for a period of up to six months. However, the mitigating circumstances compel us to suspend Schmidt's license to practice law for a shorter period. We consider the most important mitigating factors being his lack of prior discipline, his taking responsibility for his actions, his remorsefulness, and the fact that this act was a one-time aberration and not a part of a pattern of abuse. We also note that he has taken significant steps to prevent this from happening again.

## VI. Disposition.

Accordingly, we suspend Schmidt from the practice of law for thirty days. This suspension applies to all facets of the practice of law. *See* Iowa Ct. R. 35.12(3). Schmidt must comply with Iowa Court Rule 35.22 dealing with notification of clients and counsel. Costs of this action are taxed to Schmidt pursuant to Iowa Court Rule 35.26. Absent an objection by the board and under the condition that Schmidt has paid all costs assessed under rule 35.26, we shall reinstate Schmidt's license to practice law on the day after the thirty-day suspension period expires. *See* Iowa Ct. R. 35.12(2).

**LICENSE SUSPENDED.**

All justices concur except Mansfield, J., who takes no part.