# IN THE SUPREME COURT OF IOWA

No. 11–1925

Filed November 30, 2012

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Appellee,

vs.

**JEFFREY S. RASMUSSEN,**

Appellant.

---

Appeal from the report of the Grievance Commission of the Supreme Court of Iowa.

Attorney appeals from grievance commission report in disciplinary proceedings recommending we order him to cease and desist from practicing law in Iowa for sixty days. **COMPLAINT DISMISSED**.

Jeffrey S. Rasmussen of Fredericks Peebles & Morgan LLP, St. Louis Park, Minnesota, pro se.

Charles L. Harrington and Amanda K. Robinson, Des Moines, for appellee.

**CADY, Chief Justice.**

The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against Jeffrey Rasmussen alleging numerous violations of the Iowa Rules of Professional Conduct after he removed a computer server containing software from a business in which his clients had a security interest. A division of the Grievance Commission of the Supreme Court of Iowa found Rasmussen violated the rules and recommended we order Rasmussen to cease and desist the practice of law in Iowa for sixty days. On our de novo review, we are unable to conclude that Rasmussen committed any violations of our disciplinary rules. Therefore, we dismiss the complaint.

## I. Background Facts and Proceedings.

Jeffrey R. Rasmussen[1] is licensed to practice law before the courts of the Sac and Fox Tribe of the Mississippi in Iowa (the Tribe), and he also holds a law license issued by the State of Washington. Rasmussen is not, and has never been, a member of the Iowa bar. At the times relevant to the Board's complaint, Rasmussen maintained law offices in the State of Minnesota. His law firm regularly represented the Tribe, and Rasmussen has occasionally represented Native American tribes in matters before Iowa courts.

---

[1]On December 7, 2011, Rasmussen filed a motion to maintain the confidentiality of these proceedings under Iowa Court Rule 36.18(1). On December 27, we issued an order stating

> this issue should be submitted with the appeal and both parties are directed to address it in their appellate briefs. In the meantime, all pleadings previously filed in this appeal and any subsequently-filed pleadings (other than briefs) shall be treated as confidential.

Neither party addressed the issue in their appellate briefs. Therefore, Rasmussen's arguments regarding confidentiality under rule 36.18(1) are deemed abandoned.

The underlying facts and circumstances that led to the complaint brought against Rasmussen in this case were detailed in our decision involving a similar complaint brought against his former law partner, Steven Olson. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Olson*, 807 N.W.2d 268 (Iowa 2011). These facts center on the conduct of Rasmussen and Olson in the course of their representation of the Tribe in a business transaction with a now-defunct company called DNA Today and its president, Steven Whitehead. The Tribe loaned the company $1 million, secured by assets of the company, including computer software.

In essence, Rasmussen was alleged to have acted in concert with Olson, who repeatedly communicated directly with Whitehead after Whitehead was represented by lawyer Frank Carroll of the Des Moines law firm of Davis Brown. However, Rasmussen is not alleged to have personally interacted with Whitehead during this series of communications. Rasmussen was also alleged to have acted in concert with Olson regarding the self-help remedy pursued by Rasmussen when he removed a computer server containing the software from the DNA Today office on August 11, 2006. This event occurred three days after the Tribe filed an action in tribal court for breach of the loan agreement. Whitehead was not aware of the lawsuit or a temporary order issued by the court allowing repossession prior to the time Rasmussen visited the office on August 11.

Rasmussen discussed a plan with Olson to visit the DNA Today office on August 11 for the announced purpose of verifying the company was still in possession of the software that was the subject of the security agreement. However, Rasmussen's actual intent in visiting the office was to obtain a copy of the software. As detailed in our *Olson* opinion, during

the visit, Rasmussen executed his plan and removed the server that he believed contained the software. *See id.* at 274. Olson, not Rasmussen, made all of the arrangements for the visit. *See id.* at 273–74. Following the incident, Whitehead sent a letter to Olson stating:

> We strenuously object to your patently dishonest, highly unethical tactics concerning the seizure of one of our servers.
>
> We find your conduct and that of your partner, Jeffrey Rasmussen, to be reprehensible, dishonest, unscrupulous and totally devoid of moral and professional ethics. . . .
>
> You purposely lied to us about the tribe's agreement to provide immediate short term financing [and] you purposely lied to us about the intent of the visit. You also made these arrangements directly with me instead of through our legal [counsel] in an obvious intent to disguise your motives.

The Board filed a joint complaint against Olson and Rasmussen. Subsequently, Rasmussen filed numerous motions including a "Motion to Strike and to Dismiss—Board Violations of Confidentiality." The commission construed this as a motion to bifurcate and granted the motion ordering the Board to file any future claims against Rasmussen in a separate complaint.[2] On December 22, 2006, the Board filed a separate complaint against Rasmussen alleging violations of Iowa Rules of Professional Conduct 32:8.4(c) (engaging in conduct involving misrepresentation), 32:4.1(a) (knowingly making a false statement of material fact or law), 32:4.2(a) (communicating about the subject of representation with a person known to be represented by counsel), 32:8.4(d) (engaging in conduct prejudicial to the administration of justice), and 32:8.4(b) (committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer).

---

[2]We reject Rasmussen's alternate interpretation of this ruling that the commission dismissed the Board's claims against him with prejudice.

Rasmussen appeared at the hearing and denied all of the Board's allegations. The commission found that Rasmussen violated rules 32:4.2(a), 32:8.4(c), and 32:8.4(d) and dismissed the other counts. The commission recommended we order Rasmussen to cease and desist the practice of law in Iowa for sixty days.

## II. Scope of Review.

Our review of attorney disciplinary proceedings is de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thomas*, 794 N.W.2d 290, 293 (Iowa 2011). "We give respectful consideration to the findings and recommendations of the commission, but are not bound by them." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Vilmont*, 812 N.W.2d 677, 679 (Iowa 2012). "The board must prove ethical misconduct by a convincing preponderance of the evidence. This burden is less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Knopf*, 793 N.W.2d 525, 528 (Iowa 2011) (citations and internal quotation marks omitted).

## III. Findings and Disposition.

**A. Choice of Law.** Rasmussen contends the Tribe's disciplinary rules, not the Iowa disciplinary rules, should govern the conduct at issue in this proceeding under rule 32:8.5(b), the choice-of-law provision in our attorney disciplinary rules. Although this argument was raised in Rasmussen's answer to the Board's complaint, it does not appear the commission addressed it in its ruling.[3] Rule 32:8.5(b)(1) states:

---

[3]On February 23, 2011, the commission issued an order denying numerous motions filed by Rasmussen and stated that in the future any "motion to reconsider will also be immediately denied."

In any exercise of the disciplinary authority of Iowa, the rules of professional conduct to be applied shall be as follows:

(1) for conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits, unless the rules of the tribunal provide otherwise . . . .

Rasmussen argues the underlying conduct at issue in this proceeding—the repossession of the server—occurred in connection with the action commenced against Whitehead and DNA Today in tribal court on August 8, 2006. The Board concedes the tribal court constitutes a tribunal in another jurisdiction. Moreover, the Board does not argue in its brief that Rasmussen's act of repossessing the DNA Today server did not occur in connection with the proceeding before the tribal court. Rather, the Board argues we should not consider the action in tribal court to be a matter pending at the time the repossession took place because Whitehead and DNA Today had not yet been served with notice of that action. Therefore, the Board asks us to interpret rule 32:8.5(b) as requiring service of notice before an action is considered pending. According to the Board, an action is not necessarily pending after the filing of a complaint because "the term pending implies some advancement in the case beyond initiation, such that there has been progression toward a decision."

We find it is unnecessary to address the issue. Even assuming our disciplinary rules governed this matter, we find no violations occurred.

**B. Alleged Rule Violations.**

1. *Rule 32:4.2(a).* Rule 32:4.2(a) states:

In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

This rule is designed to protect a party represented by counsel from " 'the imbalance of legal skill and acumen between the lawyer and that party.' " *Olson*, 807 N.W.2d at 277 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Schmidt*, 796 N.W.2d 33, 40 (Iowa 2011)). The rule " 'promotes the integrity of the attorney–client relationship and serves to prevent a variety of overreaching.' " *Id.* (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Herrera*, 626 N.W.2d 107, 113–14 (Iowa 2001)).

To find a violation under the complaint, we must infer that Rasmussen was complicit in numerous communications between his former partner Olson and Whitehead—a represented party. Yet, even if we accept this proposition, we have previously decided in *Olson* there was insufficient evidence that Olson's communications with Whitehead prior to August 8, 2006, were not authorized by Whitehead's attorneys. *Id.* at 278. The record in this case provides just as much, if not more, evidence that Olson had permission to negotiate with Whitehead directly.

Olson sent a letter on July 25, 2006, on behalf of the Tribe directly to Whitehead with a copy to Carroll. This letter discussed the terms under which the Tribe would provide additional financing to DNA Today and invited DNA Today personnel to meet with the Tribe the next day to make a presentation regarding additional financing. The next day, July 26, Whitehead appeared for the meeting with the Tribe without an attorney. An e-mail sent to Olson by Whitehead on July 27 with a copy to Carroll suggested Olson was present for the July 26 meeting.[4] Yet, Carroll never lodged any objection. Instead, an e-mail sent by Whitehead on August 7 to DNA Today shareholders demonstrated Whitehead

---

[4]The e-mail opens with "As I stated yesterday." It also instructs Olson to refer to the "executive summary I handed out yesterday."

diligently initiated additional communications with Olson numerous times after July 27.

On August 10, Whitehead sent an e-mail to another attorney in the Davis Brown law firm relating an earlier conversation with Olson stating, "We won . . . . Olson called me today to confirm their interest in moving forward without us giving them the code." The response by the attorney to this e-mail did not support a conclusion that the Davis Brown law firm was handling DNA Today's substantive negotiations with the Tribe. Importantly, the attorney did not express any surprise and did not object that Olson and Whitehead had been negotiating directly with each other. Instead, he sent Whitehead a response warning Whitehead to "secure the source code tomorrow and take steps to ensure that the Tribe cannot easily obtain a copy of it while they are there."

Even after the events of August 11, Whitehead continued to communicate directly with Olson. On August 16 and 22, Whitehead sent Olson additional letters with copies to Carroll, among others. For the first time, these letters requested future communications from Olson be directed to Carroll. In his August 22 reply directed to Carroll, Olson stated, "We have not received any similar correspondence from you, directing that correspondence be sent to your attention." Indeed, the record is devoid of any such correspondence from Whitehead's attorneys. Moreover, there is no response on record from Carroll refuting Olson's statement.

In light of the foregoing, we need not decide whether Rasmussen was complicit in the communications that occurred between Olson and Whitehead in the weeks leading up to August 8. We are unable to find by a convincing preponderance of the evidence these communications were not authorized by Whitehead's attorneys.

2. *Rule 32:8.4(c).*    Under rule 32:8.4(c): "It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation . . . ."

The commission concluded Rasmussen violated this rule when he acted "in concert with Olson [to mislead] Whitehead about the purpose of the visit on August 11."  At the hearing, Rasmussen explained that he and Olson agreed he would visit DNA Today offices to verify DNA Today was in possession of an executable copy of the software.  However, he admitted that he and Olson agreed not to disclose the plan to demand a copy of the software during this visit and seize the DNA Today server if Whitehead refused.

We already considered this identical issue on the same facts when we decided the *Olson* case.  There, we explained that a lawyer's failure to disclose facts with the intent to deceive can constitute a violation of rule 32:8.4(c) when there is an "underlying duty to disclose."  *See Olson*, 807 N.W.2d at 280 (citing *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell*, 726 N.W.2d 397, 406 (Iowa 2007) (holding attorney violated predecessor to rule 32:8.4(c) by placing a lien on his client's property without disclosing this fact to her)).  However, "[a] commercial debtor that is in default is not entitled to a *Miranda* warning that its collateral may be repossessed if it consents to the creditor's entry on the premises."  *Id.* Thus, we concluded Olson had not violated rule 32:8.4(c).  *See id.* at 281.

Whitehead gave Rasmussen permission to enter the premises.  The record does not show that either Rasmussen or Olson affirmatively misled Whitehead, only that they declined to disclose the second purpose of the visit—securing a copy of the source code and software.  Because the facts are identical to those before us in *Olson*, we decline to reach a

different conclusion regarding whether Olson and Rasmussen defrauded DNA Today and Whitehead.

3. *Rule 32:4.1(a).* Rule 32:4.1(a) states: "In the course of representing a client, a lawyer shall not knowingly . . . make a false statement of material fact or law to a third person . . . ."

The commission concluded that Rasmussen did not violate this rule. We agree. Rasmussen made no statements to Whitehead prior to August 11, 2006, and made no false or misleading statements to him on August 11, 2006.

4. *Rule 32:8.4(b).* We also agree with the commission's finding that the record cannot support a finding Rasmussen violated rule 32:8.4(b). Rule 32:8.4(b) makes it professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects."

The Board claimed Rasmussen committed theft and trespass. However, the Board cannot demonstrate the first element of theft—that the defendant took "possession or control of the property of another" with intent to deprive the owner of the property. Iowa Code § 714.1 (2007). DNA Today was in default under the security agreement, and therefore, the Tribe had the right to take possession of the property covered under the security agreement. *Id.* § 554.9609(1)(*a*). Even though the Tribe did not actually have a security interest in the server, as opposed to the software, because DNA Today did not own the server, there is insufficient evidence Rasmussen knew the server was not covered by the Tribe's security interest at the time he took possession. Regarding the Board's allegation of trespass, it is undisputed that Whitehead gave Rasmussen permission to enter the DNA Today offices. *See id.* § 716.7(2)(*a*).

5. *Rule 32:8.4(d).* Rule 32:8.4(d) makes it professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." Rule 32:8.4(d)

> provide[s] a basis for a violation when an attorney's conduct hampers " 'the efficient and proper operation of the courts or of ancillary systems upon which the courts rely' by violating the well-understood norms and conventions of the practice of law."

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 102–03 (Iowa 2012) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 605 (Iowa 2011)); *accord Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 768 (Iowa 2010).

The commission concluded that Rasmussen's conduct in repossessing the DNA Today server under false pretenses and waiting until after the repossession to serve the tribal court order violated this rule. Under the facts of this case, we cannot conclude the exercise of a self-help remedy in lieu of a court-provided remedy is prejudicial to the administration of justice. A creditor is legally permitted to self-repossess, and the facts of this case did not support a finding that the repossession breached the peace.[5] *See Tim O'Neill Chevrolet, Inc. v. Forristall*, 551 N.W.2d 611, 617 (Iowa 1996).

**IV. Conclusion**.

Rasmussen did not violate any disciplinary rule. The case is dismissed. The motion for sanctions is denied.

**COMPLAINT DISMISSED.**

All justices concur except Zager, J., who takes no part.

---

[5]We express reservations about the practice of a lawyer in carrying out self-help repossession of secured collateral on behalf of a client. The obvious pitfalls should normally make such conduct unadvisable.