### IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,

v.

**James POLSON, Respondent.**

No. 97–987.

Supreme Court of Iowa.

Oct. 22, 1997.

Norman G. Bastemeyer and Charles L. Harrington, Iowa State Bar Association, Des Moines, for complainant.

Thomas J. Hanson, Des Moines, and James D. Polson, Des Moines, pro se, for respondent.

Considered by McGIVERIN, C.J., and LARSON, CARTER, NEUMAN, and SNELL, JJ.

LARSON, Justice.

Our grievance commission has recommended a nine-month suspension of the license of the respondent, James Polson, with credit to be given for the time he has served under a temporary suspension. The respondent has filed a statement in support of this recommendation. We conclude that the re-

spondent's conduct demands a more severe sanction and therefore order his suspension for a minimum of two years from the date of his temporary suspension.

## I. The Facts.

The respondent was first licensed in 1971 and practiced in Des Moines from that time until his temporary suspension in December 1996. The primary emphasis of his practice was in securities and corporate finance. His practice was eventually distilled to the point that one banking organization accounted for eighty-five to ninety percent of his billing. When this client hired other counsel, the respondent lost his greatest source of income. According to him, this led to his increasing use of alcohol and problems in his personal life. In November 1993, the respondent was admitted to the Meninger Clinic in Topeka, Kansas. He completed a three-week program for substance abuse for "professionals in crisis." By the summer of 1995, the respondent's home life had deteriorated to the point that he moved out of the family home. His wife stayed in the home with their three children.

On October 30, 1995, the respondent went to his wife's home, intoxicated, and grabbed her by the neck. His wife called the police, who arrested the respondent and charged him with a serious misdemeanor assault. The respondent denies that his act of grabbing his wife by the neck was done with the intent to assault her, but he admits that his actions were unjustified.

An October 31 order prohibited him from any contact with his wife. But, between October 31 and November 14, Polson was accused of violating the no-contact order by calling his wife's residence twenty-nine times. Another no-contact order was issued on January 2, 1996, ordering that Polson refrain from calling the residence for any reason.

On January 25, 1996, Polson pleaded guilty to domestic abuse causing injury in violation of Iowa Code section 708.2A(2)(b). He was sentenced to one year in jail with all but sixty days suspended. He was ordered to obtain alcoholism treatment. On the same date, Polson admitted thirty-one violations of the court's orders, and the court found him to be in contempt. He was sentenced to sixty days in jail on the contempt charge with credit for time served.

On April 13 Polson went to his wife's residence and threatened to break down the door and shoot her. Three days later, the court entered an order setting a probation revocation hearing. The court found that he had violated the order and sentenced him to six months in jail. Another no-contact order was entered on May 1, and on the same day, the court found that Polson had violated his probation. The court sentenced him to six months in jail to run concurrently with the sentence for contempt.

On June 25 the court reconsidered its sentence on Polson's application. However, the next day a warrant was issued charging Polson with violating the no-contact order by telephoning his wife's residence several times. On August 1 the court found that Polson had violated the no-contact order thirteen more times. It sentenced him to twenty-five days in jail on each count.

In an order of December 19, 1996, we temporarily suspended the respondent's license on the basis that he had been found guilty of criminal assault and contempt and repeated violations of the no-contact orders. The suspension was to remain in effect pending further order.

## II. Conclusions.

The Board of Professional Ethics and Conduct charged violations of the following rules: DR 1–102(A)(3) (engaging in illegal conduct involving moral turpitude), DR 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice), DR 1–102(A)(6) (engaging in any other conduct adversely reflecting on fitness to practice law), and DR 7–106(A) (disregarding a standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding).

■■■ We have held that it is a morally reprehensible crime to engage in domestic abuse assault. *Committee on Prof'l Ethics & Conduct v. Patterson*, 369 N.W.2d 798, 801 (Iowa 1985). The domestic abuse in this case therefore violates DR 1–102(A)(3). We find

that the respondent's convictions of contempt have violated DR 1–102(A)(5) because the respondent's contumacious conduct in defying the court's orders prejudiced the administration of justice. His conduct in violating the orders of the court also reflects adversely on his fitness to practice law and violates DR 1–102(A)(6) as well as DR 7–106(A).

### III. *Disposition.*

█ While the commission recommended a nine-month suspension with credit given for time spent under our temporary suspension, we believe the facts of this case require a more severe sanction. The respondent's violation of the no-contact orders was egregious. On one occasion, after having persuaded the district court to release him from jail on the basis that he would not violate the order again, he violated it the same day or the next.

We conclude that the respondent's license should be suspended for a minimum of two years from the date of the temporary suspension on December 19, 1996. This suspension shall apply to all facets of the practice of law. *See* Ct. R. 118.12. Costs are taxed to the respondent pursuant to Court Rule 118.22.

**LICENSE SUSPENDED.**