**STATE of Iowa, Plaintiff,**

v.

**IOWA DISTRICT COURT FOR POLK COUNTY, Defendant.**

No. 97–1162.

Supreme Court of Iowa.

July 29, 1998.

Thomas J. Miller, Attorney General, Mary Tabor, Assistant Attorney General, John P.

Sarcone, County Attorney, and Mark Sandon, Assistant County Attorney, for plaintiff.

Thomas D. Hanson, Des Moines, for defendant.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and ANDREASEN, JJ.

NEUMAN, Justice.

The State petitioned for certiorari to challenge the lawfulness of a writ of habeas corpus issued by one district court judge to countermand another judge's order extending the probation of James Polson. We granted the State's petition and, for the reasons that follow, now sustain the writ.

## I. Background Facts and Proceedings.

James Polson's interaction with the District Court for Polk County has been recently documented in our opinion suspending his license to practice law, *Iowa Supreme Court Board of Professional Ethics & Conduct v. Polson*, 569 N.W.2d 612 (Iowa 1997). In short, Polson spent most of 1996 in jail. His incarceration originated with two distinct proceedings: (1) On January 25, 1996, Polson pleaded guilty to domestic assault in violation of Iowa Code section 708.2A(2)(b) (1995), for which he was sentenced to one year in jail, all but sixty days suspended, and placed on probation for one year with the requirement of attending programs to treat alcohol abuse and domestic violence; (2) at the same time, he stipulated to thirty-one violations of a no-contact order issued in October 1995, resulting in a finding of contempt warranting sixty days in jail with credit for time served. Polson's subsequent and repeated violations of the court's initial no-contact order led to a confusing array of hearings beginning in May 1996.

On May 2, during a hearing at which Polson appeared personally and with counsel, Roger Owens, the court heard proof that Polson violated the no-contact order in April 1996. Finding Polson in contempt, Judge Cynthia Moisan sentenced him to six months incarceration with credit for time served. During the proceedings, the following colloquy occurred:

THE COURT: Well, I agree with Mr. Owens. I'm not sure we're here today on a probation violation hearing. Am I in error, Mr. Sandon?

MR. SANDON [Prosecutor]: Judge, in setting the violation of the no-contact order hearing, the order that I have shows that it addresses the probation violations.

MR. OWENS: I have no report of violations.

THE COURT: Apparently there's a probation hearing scheduled for June 6 on ICIS, so I think we'll deal with his probation violation at that time.

Polson's counsel filed a motion to reconsider the six-month sentence. At a hearing held June 25, 1996, wherein Polson was represented by Jerry Foxhoven as well as Roger Owens, the following exchange with Judge Moisan took place:

THE COURT: We're here in the matter of *State of Iowa versus James D. Polson*, criminal number 95907. This is a hearing on a motion to reconsider filed by Roger Owens, defendant's attorney. And I believe it is also a probation revocation hearing. Would that be essentially correct?

MR. SANDON: I thought we already addressed his probation revocation.

MR. OWENS: I think we did it at the same time, Your Honor.

MR. SANDON: I think when we ended up the last time we had taken care of the probation revocation, so this is a reconsideration, I think, on the violation of the no-contact order.

MR. OWENS: Judge, you gave him six months run concurrent with contempt, is how I recall it.

After discussing the pros and cons of continued incarceration versus treatment for alcohol abuse, the following exchange occurred:

THE COURT: Well, Mr. Polson, as Mr. Sandon said, I don't know what your threshold is for jail time. I'm hoping this is it.

THE DEFENDANT: It is, Judge.

THE COURT: Because I don't know what else to do, so I'm going to reconsider your sentence, and I'm going to let you out

of jail today. No contact order's still in effect, but I'm going to—

This is why I asked Mr. Sandon if we could deal with the probation matter because I want to make the Antabuse and his reporting to the probation officer regarding the Antabuse a condition of his probation. Do you have any objection to that?

MR. SANDON: No, I don't, Judge.

THE COURT: Do you have the probation number?

MR. SANDON: It will be the same number as the one you have.

THE DEFENDANT: Judge, my son has indicated he would like to live with me, and that would be very good. That would give me some additional support.

THE COURT: I'm going to extend your probation period for another year.

MR. SANDON: Judge, had we already done that the last time, maybe?

THE COURT: I don't see that in here. That's what I was wondering.

MR. FOXHOVEN: Judge, he indicates to me that he believes you did the last time, that you extended it a year.

THE COURT: Did he ever finish the domestic abuse classes?

MR. SANDON: No.

THE COURT: You need to do that. Be on probation until January 5th—excuse me—January 25th, 1998....

In keeping with this colloquy, the court file reveals a document dated May 31, 1996, finding Polson in contempt for violating his probation and ordering that he serve a six-month sentence concurrent with his sentence for violating the no-contact order. The written order, signed by Judge Moisan, also stated: "Probation is extended to 1–25–98."

Polson's reprieve was disappointedly short lived. At a hearing held August 1, 1996, the court found Polson violated the no-contact order thirteen more times. He was sentenced to serve six months in jail, with credit for time served. By separate written entry, the court found no proof of further probation violation but directed that Polson "shall remain on probation until 1–25–98 as previously ordered."

Upon his release on December 17, 1996, Polson was ordered to immediately make arrangements for probation supervision. He did so, but the meeting with his probation officer did not go well. Advised that he would be on intensive supervision with curfews and electronic monitoring, Polson refused to sign the probation agreement. A warrant issued for his arrest.

On December 18, 1996, free on bond, Polson filed the petition for writ of habeas corpus which forms the basis for the controversy now before us. His petition sought "relief from the confinement of probation and no-contact." As grounds for issuance of the writ, Polson claimed he had suffered a significant and unlawful restraint on his liberty because (1) Judge Moisan had no authority to extend his probation beyond the original one-year term, and (2) even if the law permitted such an extension, it was imposed upon him without due process. His due process claim rested on the fact that the court records revealed no transcript of a hearing in connection with the order entered May 31, 1996, extending his probation to January 25, 1998.

The State resisted Polson's petition on the ground it stated no claim upon which a writ of habeas corpus could be granted. Before the matter could be heard, however, Polson appeared before district associate judge Patricia Houlihan on the State's report of probation violation and Polson's motion to dismiss the State's action and terminate probation. At this hearing Polson, now represented by attorney Thomas D. Hanson, reiterated his due process argument and challenge to Judge Moisan's order extending his probation. Judge Houlihan rejected these arguments, reasoning that due process was satisfied by the later, transcribed hearing at which Polson was notified, in open court, that his probation was extended. The judge also overruled Polson's motion to terminate probation, finding no merit in his claim that probation could not be extended from one to two years. The court nevertheless found Polson had a "legitimate misunderstanding of his obligations" concerning probation, thus his refusal to "sign-up" on December 17 did not constitute a "violation" warranting revoca-

tion. Polson filed an appeal of this ruling which, thirty days later, he withdrew and dismissed.

Meanwhile, on May 8, 1997, Polson's petition for writ of habeas corpus came on for hearing before Judge George Bergeson. Like Judge Houlihan, Judge Bergeson believed the district court had authority to extend probation for two years in the case of an indictable misdemeanor. *See* Iowa Code § 907.7 (length of probation shall not exceed two years for misdemeanor). But—unlike Judge Houlihan—Judge Bergeson was convinced the State had denied Polson due process because the record revealed no hearing in connection with the May 31, 1996, order that directed the extension. Judge Bergeson therefore sustained the writ of habeas corpus, terminating Polson's probation "immediately." This certiorari action by the State followed.

## II. Issue on Appeal and Scope of Review.

The issue posed by the State's certiorari petition is "whether defendant [Polson] could properly challenge the extension of his probation through a habeas action." By granting the writ of habeas corpus, the State asserts, Judge Bergeson "erred, and thereby exceeded [his] authority," making the controversy appropriate for disposition by certiorari. *See French v. Iowa Dist. Ct.*, 546 N.W.2d 911, 913 (Iowa 1996) ("Certiorari is a procedure to test whether a . . . court exceeded its proper jurisdiction or otherwise acted illegally."); Iowa R. Civ. P. 306 (same). Our review on certiorari is for the correction of errors at law. *French*, 546 N.W.2d at 913.

## III. Analysis.

■ The State contends Polson chose the wrong avenue for relief when he challenged Judge Moisan's order by writ of habeas corpus. The argument rests on solid authority. Iowa Code chapter 663 governs the issuance of writs of habeas corpus. Section 663.36, captioned "Nonpermissible issues," states: "It is not permissible to question the correctness of the action of a court or a judge when lawfully acting within the scope of their authority." This statutory limitation on the scope of habeas relief echoes the long-established rule at common law:

"It is a settled rule that wherever a court has acquired jurisdiction of a case, no other court may, upon habeas corpus, interfere with its action as to matters concerning which it has acquired jurisdiction. Any other rule would produce a conflict of jurisdiction over the right to the custody of the person of the prisoner and lead to inextricable confusion, resulting in a defeat of the due administration of the law."

*Peff v. Doolittle*, 235 Iowa 443, 447, 15 N.W.2d 913, 915 (1944) (quoting 25 Am.Jur. *Habeas Corpus* § 108, at 223); *accord Bell v. Lainson*, 247 Iowa 505, 506, 74 N.W.2d 592, 592–93 (1956) ("Habeas corpus cannot perform the function of an appeal from a judgment of conviction and may not be used as a means of reviewing errors of law and irregularities, in connection with the charge and trial, not involving the question of jurisdiction.").

In *Peff*, this court acknowledged the value and importance of the writ in guarding and preserving human liberty. The court nevertheless made clear that exercise of the power to grant the writ could not be used "to unsettle valid legal proceedings or to interfere with the exercise of the jurisdiction of other courts." *Peff*, 235 Iowa at 448, 15 N.W.2d at 915. Thus, the court held, "unless void, proceedings of a court of concurrent jurisdiction cannot be inquired into by habeas corpus in another court. The remedy can only be by appeal." *Id.* at 451, 15 N.W.2d at 917.

In defending Judge Bergeson's ruling, Polson makes no attempt to refute this authority. Rather, he relies on *State v. Mandicino*, 509 N.W.2d 481 (Iowa 1993), to suggest that Judge Moisan was without authority to extend Polson's probation without his consent. Alternatively he claims the lack of a hearing preceding entry of her order violated his right to due process. In either event, he argues, Judge Moisan's order is void, rendering Judge Bergeson's act—releasing Polson from probation—lawful.

Polson's reliance on *Mandicino* is misplaced. In *Mandicino,* the defendant sought

a two-year extension of his probation to pay fines, then challenged the lawfulness of the extension when, sometime later, the State filed a complaint of probation violation. *Mandicino*, 509 N.W.2d at 482. Describing Mandicino's plight as a "self-inflicted wound," we held he remedied any "defect" in the court's authority by requesting the extension. *Id.* at 483. Our decision turned on the distinction between the court's subject matter jurisdiction and its authority to determine the particular case before it. *Id.* at 482. A court's subject matter jurisdiction can be raised at anytime, *see id.*, but "an impediment to a court's *authority* can be obviated by consent, waiver or estoppel." *Id.* at 483. Because the court clearly possessed the statutory power to "grant and superintend" Mandicino's probation, any error in its decision to grant his request for extension—a matter of mere authority—was "remedied" by Mandicino's consent. *Id.* at 483; *accord State v. Canas*, 571 N.W.2d 20, 23 (Iowa 1997). We did not, in *Mandicino*, decide whether the extension sought and received by Mandicino was, in fact, permitted by statute. Nor did we decide whether the court's authority, generally, hinges on the probationer's "consent."

We need not decide those questions here. Judge Moisan was plainly acting within her statutorily granted jurisdiction when sentencing Polson and dictating the terms of his probation. *See* Iowa Code § 602.6306(2) (granting district associate judges jurisdiction over indictable misdemeanors); *Canas*, 571 N.W.2d at 23 (court has authority to fix length of probation). As early as May 31, 1996, Polson was made aware by written order that Judge Moisan had extended his probation an additional year to satisfy unfulfilled conditions of the original sentencing order; at a reported hearing held June 25, 1996, his counsel acknowledged the order and Polson's understanding of it. Any impediment to the court's authority to impose this additional condition, whether for alleged lack of due process or other legal error, was obviated by Polson's failure to challenge it by certiorari or postconviction petition. *Mandicino*, 509 N.W.2d at 483; *see Thompson v. City of Osage*, 421 N.W.2d 529, 531 (Iowa 1988) (petition for writ of certiorari must be filed within thirty days from date tribunal exceeded jurisdiction or otherwise acted illegally); Iowa Code § 822.2(5) (authorizing postconviction relief for unlawful revocation of probation or when petitioner "otherwise unlawfully held in . . . restraint").

Habeas corpus is not the appropriate vehicle for challenging final judgments or seeking relief from alleged errors of law not involving the question of jurisdiction. *Bell*, 247 Iowa at 506, 74 N.W.2d at 592–93. "[U]nless void, proceedings of a court of concurrent jurisdiction cannot be inquired into by habeas corpus in another court." *Peff*, 235 Iowa at 451, 15 N.W.2d at 917. Judge Bergeson made such inquiry here and, in doing so, exceeded his authority.

We, therefore, sustain the writ of certiorari, thereby annulling the writ of habeas corpus issued by Judge Bergeson. Because Judge Bergeson's writ relieved Polson from further probationary obligations, we remand to the chief judge of the district, or his designee, for hearing on whether the purposes of probation have been fulfilled. *See* Iowa Code § 907.9.

**WRIT SUSTAINED; CASE REMANDED.**