# IN THE SUPREME COURT OF IOWA

No. 19–0712

Filed September 6, 2019

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**JOHNATHAN LEE SEARS,**

Respondent.

On review of the report of the Iowa Supreme Court Grievance Commission.

The Iowa Supreme Court Attorney Disciplinary Board filed a complaint alleging the attorney violated the rule of professional conduct regarding commission of a criminal act. **LICENSE SUSPENDED.**

Tara van Brederode and Crystal W. Rink, Des Moines, for complainant.

Johnathan Lee Sears, Ankeny, pro se.

**CHRISTENSEN, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board (Board) charged an Iowa attorney with violations of Iowa Rule of Professional Conduct 32:8.4(b) (commission of a criminal act) in connection with convictions for operating while intoxicated (OWI), domestic abuse assault causing bodily injury, and several instances of violating a no-contact order. After a hearing, the Iowa Supreme Court Grievance Commission found the alleged violations had occurred and recommended the attorney be suspended for one year without the possibility of early reinstatement.

Upon our de novo review, we conclude the attorney violated rule 32:8.4(b) as alleged in counts I, II, and III. We order that his license be suspended indefinitely with no possibility of reinstatement for two years.

## I. Background Facts and Proceedings.

Johnathan Sears is an attorney admitted to the Iowa bar in September of 2017. He is a partner at the Des Moines law firm of Clark & Sears Law. Five months after his admittance, on February 6, 2018, law enforcement located Sears on a highway in Polk County pushing a heavily damaged, disabled vehicle. Sears indicated he rear-ended an unknown vehicle; he did not understand where he was or where the accident took place. Law enforcement located an open bottle of vodka in the back seat of Sears's car. After failing field sobriety tests, Sears consented to a breath test, which returned a result of 0.181 blood alcohol concentration. He was then arrested for OWI in violation of Iowa Code section 321J.2 (2018).

On June 13, Sears pled guilty to OWI, first offense. The sentencing court placed Sears on probation for one year. The terms of Sears's probation prohibited alcohol use, forbade the possession of firearms, and mandated compliance with state and federal laws. The sentencing court also required Sears to cooperate with and complete the recommendations

of his substance abuse evaluation. That evaluation recommended Sears complete extended outpatient treatment and attend weekly Alcoholics Anonymous (AA) meetings. Sears failed to begin the recommended treatment within thirty days of his sentencing and, as a result, violated the sentencing court's order with respect to the terms of his probation. This failure prompted a September 24 order instructing Sears to obtain a new substance abuse evaluation.

About two weeks later, on October 7, West Des Moines police received a 911 call from Jane Doe.[1] The 911 call revealed a panicked Doe explaining, "[M]y ex . . . is trying to break in" and "he was here and he attacked me and then I got him to leave, and then he came back." As it turns out, Doe is Sears's former spouse. Apparently, Doe and Sears divorced in May but remained intimate.

The facts leading to the 911 call on October 7 are not disputed. Doe and Sears spent that day at Doe's apartment. Doe did not see Sears consume alcohol, but around 9:00 or 10:00 p.m., she could smell it on him. Doe was in her bedroom when she heard Sears, who was in a different room, pull the slide on a handgun she owned. Sears entered Doe's bedroom with the handgun and asked how to disassemble it. Neither Doe nor Sears could figure out how to disassemble the handgun, and Sears left the bedroom with the gun. Worried about Sears, Doe walked to the living room to speak with him. Sears then asked Doe if he could use the handgun to kill himself. Doe refused.

At some point, Sears threw the handgun at Doe along with the accompanying bullets. Doe collected the bullets, picked up the handgun, proceeded to her bedroom, and hid the handgun under her mattress.

---

[1]Due to the sensitive nature of the underlying facts, we will use the pseudonym "Jane Doe" in reference to the victim witness.

Sears entered the bedroom and asked for the handgun, but Doe again refused. This refusal evidently upset Sears. Sears proceeded to grab Doe's hair and slam her to the ground. With her back against the ground, Sears positioned his body on top of Doe, pinning her arms with his legs. At this point, Sears slammed Doe's head against the ground and screamed at her. Doe's head was slammed four or five times and continued to such an extent that her vision began to "black out." At this point, Doe relented and told Sears the location of the handgun.

Sears then left the bedroom with the handgun. He returned looking for the bullets, and Doe was able to grab the handgun from Sears. Eventually, Sears returned to the bedroom and apologized to Doe. Doe told Sears to leave, and after asking Sears multiple times, he left the apartment. Doe locked her apartment door and returned to her bedroom. A short time later, Doe heard Sears pounding on her apartment door, as though he was "trying to break it open." In fact, Doe testified Sears's pounding cracked her doorframe. At this time, Doe called 911 because she was afraid Sears "was going to break in and hurt [her]." During the 911 call, Sears left the apartment door for a moment, but returned to Doe's door and continued to pound.

Three West Des Moines police officers were dispatched to Doe's apartment complex at approximately 10:21 p.m. Officer Brandon Condon was first on the scene and noticed a man walking out of the complex. The man identified himself as John, and Officer Condon observed that he had bloodshot, watery eyes; slurred speech; a strong odor of alcoholic beverages; and impaired balance. Officer Condon identified the man as Sears. Upon questioning, Sears admitted to drinking alcohol that night. Sears also admitted to Officer Condon that it was a possibility someone was injured in a domestic fight. Sears consented to a search of his cell

phone. Officer Condon viewed several text messages sent by Sears to his current wife. The texts included the following content:

At 10:04:30 PM, Sears texted, "I'm drunk as fuck."

At 10:04:38 PM, Sears texted, "7 have I gun."

At 10:05:00 PM, Sears texted, "And I'm leaving her 7."

At 10:05:37 PM, Sears texted, "Let this make you happy."

At 10:06:31 PM, Sears texted, "I've assaulted her."

At 10:07:34 PM, Sears texted, "I've threatened to kill myself. I can't so with her."

At 10:08:08 PM, Sears texted, "I don't want to kill her."

Sears submitted to a preliminary breath test that registered a 0.222 blood alcohol concentration.

Upon entering Doe's apartment, Officer Condon observed a small black handgun on the dining room table. He described Doe's demeanor as "[v]ery timid, scared, visibly shaken up, emotional." Doe said her head, neck, and ears were sore. She also had a red mark on her inner bicep from Sears pinning her arms down with his knees. Doe later stated she suffered from headaches for a week following the assault.

Sears was arrested and charged with domestic abuse assault causing bodily injury in violation of Iowa Code sections 708.2A(2)(*b*) and 708.1(2)(*a*).[2] On October 8, the district court entered an order of protection restraining Sears from contacting Doe. On October 17, Sears entered a guilty plea to the domestic abuse assault causing bodily injury. He admitted to "physically and verbally assault[ing] [his] ex-wife . . . , placing [her] in fear, and causing visible marks on her arms" and

---

[2]Sears was also charged with public intoxication, first offense, in violation of Iowa Code section 123.46. This charge was dropped upon his petition to plead guilty to domestic abuse.

was sentenced to a one-year probation. He was further ordered to comply with the no-contact order, complete an Iowa domestic abuse program, and cooperate with all substance abuse programming recommendations. Sears's no-contact order was later modified to permit his return to Doe's apartment "one time with law enforcement to retrieve . . . personal and work related items," but otherwise remained unchanged with respect to its prohibition of any contact with Doe until 2023.

A probation revocation hearing also took place on October 17, 2018, concerning Sears's OWI probation. Sears stipulated to violating the terms of his probation by committing domestic abuse assault causing injury and was found in contempt of court. The district court continued probation, subject to its original terms, and placed Sears on secured continuous remote alcohol monitoring.

The Board filed a two-count complaint against Sears on December 14. It alleged Sears violated Iowa Rule of Professional Conduct 32:8.4(b) for his criminal acts of OWI and domestic abuse assault causing bodily injury. Sears filed an answer to the complaint and admitted to its entirety.

The Board subsequently filed an amended and substituted complaint, which added a third count relating to Sears's alleged violations of the no-contact order issued on October 8. The Board noted the no-contact order prevented Sears from communicating or attempting to communicate with Doe, in writing or by telephone, and provided that Sears was not to be in the immediate vicinity of Doe's residence. The amended complaint outlined six separate instances of alleged conduct by Sears that violated the no-contact order and asserted this conduct violated Iowa Rules of Professional Conduct 32:8.4(b) and 32:3.4(c)[3] (knowingly

---

[3]The Board subsequently abandoned its position that a violation of rule 32:3.4(c) occurred.

disobeying an order of a tribunal). Sears filed his answer to the amended complaint. He admitted to the existence and scope of the no-contact order but denied the factual allegations underlying his contact with Doe.

A hearing took place before the grievance commission on February 28, 2019. Doe and Sears each testified. Sears admitted to operating while intoxicated and admitted violating the terms of his probation. He did not complete the extended outpatient treatment nor did he attend weekly AA meetings within thirty days of the sentencing order, although Sears did indicate he took recent steps to complete the substance abuse recommendations. He also admitted that on October 7, he violated the terms of his probation by consuming alcohol, possessing a firearm, and assaulting Doe. Sears denied violating the terms of the no-contact order. He testified that he did not call Doe, and he denied sending her emails. Sears also denied going to Doe's apartment on January 30, 2019.

Sears also testified that he was a named plaintiff in a small claims petition for replevin filed against Doe on December 31, 2018. Sears denied filing the petition and indicated "[he] didn't have much involvement with it," yet he admitted to attending the hearing with his current wife on behalf of the plaintiffs. After further questioning, Sears admitted a friend of his was retained to file the petition. The petition for replevin sought various items that belonged to Sears and requested damages from Doe for unlawful retention and loss of consortium. When asked whether the replevin action was filed to embarrass Doe, Sears responded, "I had nothing to do with the list."[4]

---

[4]The addendum attached to Sears's replevin action includes a list of seven different items. In the middle of the list are two different sex toys that are described in shocking detail.

Doe testified to the events surrounding the domestic abuse assault and to the violation of the October 8 no-contact order. Doe stated she received two emails from Sears's email account on October 9. In addition, Doe testified that Sears attempted to contact her on her cell phone on November 1, January 30, 2019, and February 11. She further indicated that she came in contact with Sears on January 30. Doe was exiting her apartment garage when she noticed Sears was standing outside. Sears stated he wanted to talk, and because it was cold outside, Doe invited him up to her apartment. Sears was at Doe's apartment for an hour and a half. They discussed the disciplinary hearing, and Sears then asked Doe to drop the no-contact order and to testify on his behalf at the hearing. At this time, Doe allowed Sears to look for the items listed in his replevin action, but "he didn't want to [look], so—[a] lot of [the conversation] was just . . . small talk."

On April 30, the commission issued its findings and recommendations. It concluded Sears violated rule 32:8.4(b) based on his convictions for OWI and domestic abuse assault causing bodily injury. Further, the commission determined a convincing preponderance of the evidence supported the conclusion that Sears violated the terms of the no-contact order. The commission rejected Sears's testimony that he never contacted Doe at her residence and did not find his denial of sending emails or making phone calls credible. Ultimately, the commission found Sears's violations of the law, the multiple violations of his probation, and the continued defiance of the no-contact order to be "precisely the sort of conduct which reflects a connection between the conduct and the fitness to practice law."

## II. Standard of Review.

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 884 N.W.2d 772, 776 (Iowa 2016). We respectfully consider the commission's findings and recommendations but are not bound by them. *Id.* at 777. The allegations of attorney misconduct must be proved by a convincing preponderance of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nine*, 920 N.W.2d 825, 827 (Iowa 2018). "This standard is more demanding than proof by [a] preponderance of the evidence, but less demanding than proof beyond a reasonable doubt." *Id.* at 827–28 (alteration in original) (quoting *Johnson*, 884 N.W.2d at 777). We may impose a lesser or greater sanction than that recommended by the commission. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Deremiah*, 875 N.W.2d 728, 732 (Iowa 2016).

## III. Ethical Violations.

The parties do not dispute Sears violated rule 32:8.4(b) for the conduct alleged in counts I and II of the complaint. "[W]e nonetheless exercise independent judgment to ensure that the record and the law support the conclusion of the commission that ethical violations occurred." *Id.* Sears contested the violation alleged in count III.

Rule 32:8.4(b) states, "It is professional misconduct for a lawyer to . . . commit a criminal act the reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Iowa R. Prof'l Conduct 32:8.4(b). We have previously determined not every commission of a criminal act reflects adversely on an attorney's fitness to practice law. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 767 (Iowa 2010). It is the nature and circumstances surrounding the act that are relevant in evaluating whether the criminal act reflects adversely on an attorney's fitness to practice law. *See id.* In other words, rule

32:8.4(b) "requires the criminal act to have a nexus with the lawyer's honesty, trustworthiness, or fitness to practice law." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Blessum*, 861 N.W.2d 575, 588 (Iowa 2015). Recognized pertinent considerations include the attorney's mental state, a demonstrated disrespect for the law or law enforcement, the presence or absence of a victim and any injury thereto, and the existence of a pattern of criminal conduct. *Templeton*, 784 N.W.2d at 767. Ultimately, we will consider a number of factors to determine whether the criminal act reflects adversely on an attorney's fitness to practice law. *Id.*

The Board alleged Sears violated rule 32:8.4(b) in all three counts of the complaint. We will use the factors recognized in *Templeton* to examine whether each of Sears's actions constitute a violation of rule 32:8.4(b).

**A. Count I.** We first consider Sears's conviction for OWI, first offense. We have previously stated that operating while intoxicated "create[s] a grave risk of potential injury to anyone on the same road." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weaver*, 812 N.W.2d 4, 11 (Iowa 2012). This factor favors a finding that a criminal act violated rule 32:8.4(b). *Id.* The incident may not result in any direct harm to a person, yet it still may produce a victim of property damage. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cannon*, 821 N.W.2d 873, 878 (Iowa 2012) ("[The] OWI incident did result in property damage to the parking lot of a grocery store, thereby making the store a victim of [Cannon's] criminal action."). Here, Sears's blood alcohol content was 0.181, more than twice the legal limit of 0.080. His own car was heavily damaged from rear-ending an unknown car. Driving while intoxicated could lead to serious injury to other drivers on the road and did, in this case, result in a collision with an unknown vehicle.

Accordingly, we conclude Sears's criminal act of OWI resulted in a victim of property damage and a grave risk of potential injury to others. Sears's conduct constitutes a violation of rule 32:8.4(b).

**B. Count II.** We next consider Sears's conviction for domestic abuse assault causing bodily injury. We have long recognized that an attorney's criminal act of domestic violence may reflect adversely on his fitness to practice law. *Deremiah,* 875 N.W.2d at 735–37 (determining domestic assault reflected adversely on fitness due to the use of violence resulting in injury); *Blessum,* 861 N.W.2d at 590 (finding a nexus between the attorney's conviction for assault causing injury and his fitness to practice law based on the attorney's conscious decision to assault his victim and his lack of respect for law enforcement evidenced by his falsely taking credit for summoning police); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Schmidt,* 796 N.W.2d 33, 41 (Iowa 2011) (holding the attorney violated rule 32:8.4(b) with acts of domestic abuse because of his conscious decision to injure the victim and his disrespect for the law by impeding the victim's help); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Axt,* 791 N.W.2d 98, 101 (Iowa 2010) (concluding the attorney's domestic abuse with significant injuries and repeated violations of no-contact order demonstrated disrespect for the law reflecting adversely on his fitness to practice law).

Applying the recognized factors, we conclude Sears's conviction for domestic abuse assault causing bodily injury reflects adversely on his fitness to practice law. First, Sears "made the conscious decision to act on [his] hostility" at the time of the assault. *Schmidt,* 796 N.W.2d at 41. Rather than walking away, Sears threw Doe to the ground and slammed her head until she neared unconsciousness. Second, Sears demonstrated a disrespect for the law through his use of violence. "The use of violence

to settle disputes is the antithesis of the rule of law. Lawyers who use violence undermine the legal system which requires respect, restraint, and resort to the legal process." *Deremiah*, 875 N.W.2d at 735. Third, Doe was clearly a victim who suffered injury. *Blessum*, 861 N.W.2d at 590. The 911 recording—which demonstrates the absolute fear in Doe's voice—is a powerful testament to the violence Sears handed down. Responding law enforcement further indicated Doe was visibly shaken and bared a red mark on her inner bicep from Sears pinning her arms down with his knees. Moreover, she also suffered headaches for a week following the assault.

We agree with the commission that Sears's criminal act of domestic abuse assault causing bodily injury violated rule 32:8.4(b). Sears's decision to act on his hostility and use violence reflects adversely on his ability to practice law.

**C. Count III.** We also conclude a nexus exists between Sears's violations of the no-contact order and his honesty, trustworthiness, or fitness to practice law.[5]

An attorney may not simply ignore the order of a tribunal made in the course of a proceeding. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gailey*, 790 N.W.2d 801, 807 (Iowa 2010). The conduct of an attorney that violates a court order is evidence of that attorney's disrespect for a lawful order of the court. *Id.* It follows that an attorney who cannot respect a court order "lacks the required fitness to practice law." *Id.*

The commission determined a convincing preponderance of the evidence existed, based upon the credible, unrefuted testimony of Doe, that Sears violated the court's no-contact order on at least six separate

---

[5]This rule may be violated even though authorities never charged Sears with a violation of the no-contact order. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Taylor*, 887 N.W.2d 369, 378 (Iowa 2016).

occasions. The record indicates that on October 8, 2018, Sears received and signed a copy of the no-contact order prohibiting any contact with Doe. The very next day, according to Doe's testimony, she received two emails from Sears's email account.[6] Doe further testified that on November 1, January 30, 2019, and February 11, she received (but did not answer) calls on her cell phone from Sears's phone number. In addition, Doe testified that on January 30, 2019, Sears was outside her residence. Because it was cold outside, she allowed him to come inside. He stayed for an hour and a half during which time they talked. Sears asked Doe to drop the no-contact order and to testify on his behalf at the disciplinary hearing. They also discussed Sears's replevin action. With respect to the emails and phone calls, the commission did not find Sears's denials credible. He offered no expert testimony to explain how his email and phone may have been compromised. The commission also found a clear violation of the no-contact order based on Doe's credible testimony that she encountered Sears at her apartment.

We agree with the commission's finding. The Board carried its burden by a convincing preponderance of the evidence that Sears violated the terms of the no-contact order. In repeatedly violating the no-contact order, Sears's conduct is evidence of his disrespect for a lawful court order. *See Gailey*, 790 N.W.2d at 807; *see also Axt*, 791 N.W.2d at 101 ("Axt's second conviction for domestic abuse and his repeated violations of a court order banning contact with the victim clearly demonstrate his disrespect for the law."). The repeated violations reflect adversely on Sears's fitness

---

[6]On October 9, 2018, less than twenty-six hours after the issuance of the no-contact order, Doe received an email from Sears's email account stating, "Is it ok (with you) for me to talk to you?" About two hours later, Doe received another email from Sears's email account. It stated, "I will take the silence as a no, and I will not contact you again until you reach out to me."

to practice law. For these reasons, we conclude Sears violated rule 32:8.4(b).

### IV. Sanctions.

Particular misconduct does not receive the application of per se rules to determine sanctions. *Deremiah*, 875 N.W.2d at 737. Instead, an appropriate sanction is determined upon consideration of the totality of facts and circumstances of each case. *Id.* However, we seek consistency with our prior cases when determining the appropriate sanction. *Templeton*, 784 N.W.2d at 769. That being said, we consider the need to deter reoffending, deter the misconduct of others, protect the public, and maintain the reputation of the bar. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Qualley*, 828 N.W.2d 282, 293 (Iowa 2013); *see also Deremiah*, 875 N.W.2d at 737.

We have previously imposed the sanction of a two-year suspension for an attorney who committed domestic abuse and violated the terms of a no-contact order. That was the case in *Iowa Supreme Court Board of Professional Ethics & Conduct v. Polson*, 569 N.W.2d 612 (Iowa 1997). In a manner far less severe than Sears's violent attack on Doe, the attorney in *Polson* was prohibited from any contact with his wife after he went to her home, intoxicated, and grabbed her by the neck. *Id.* at 613. After the issuance of a no-contact order, Polson proceeded to violate its terms no less than thirty different times. *Id.* One particular violation occurred while Polson was on probation; he went to his wife's home and threatened to break down the door and shoot her. *Id.* In imposing a minimum two-year suspension, we noted Polson's violation of the no-contact orders was egregious. *Id.* at 614.

In *Axt*, we surveyed the range of sanctions imposed against lawyers committing domestic abuse and concluded the suspension ranges from

two months up to two years "depending on the nature and extent of other misconduct" in the same case. 791 N.W.2d at 102. Axt's misconduct included domestic abuse and multiple violations of a no-contact order. *Id.* We determined the appropriate sanction would be at the high end of the range because enhanced sanctions may be imposed when multiple violations of the disciplinary rules occur. *Id.* at 102–03. Axt, who practiced law for more than thirty-one years, had a history of two private admonitions and was previously suspended as a consequence of alcoholism. *Id.* at 100, 103. We put in place a suspension of two years after considering several mitigating factors including Axt's attempt to control his alcohol addiction. *Id.* at 103.

We handed down an eighteen-month suspension with no possibility of reinstatement on the attorney in *Blessum,* 861 N.W.2d at 595. We compared the facts of *Blessum* to that of our most recent domestic abuse case at the time, *Schmidt. Id.* at 594 (citing *Schmidt,* 796 N.W.2d 33). We determined Blessum warranted a much longer suspension than the thirty days imposed in *Schmidt* due in part to the fact that Blessum's victim was a client. *Id.* Additionally, the attorney in *Schmidt* "voluntarily undertook 'intensive rehabilitative efforts' after assaulting his wife." *Id.* (quoting *Schmidt,* 796 N.W.2d at 39). This included a ten-day program on destructive behaviors, anger management, domestic abuse intervention, parent enrichment, and counseling with two different professionals. *Id.* (citing *Schmidt,* 796 N.W.2d at 39). We noted Blessum completed his court ordered programs and abided by the terms of his probation, but we found Blessum's discounting of his domestic abuse actions at the commission hearing to be a significant aggravating factor. *Id.*

In *Deremiah,* "we [took] another step in strengthening our disciplinary approach" for professional conduct violations arising from

domestic abuse assault causing bodily injury. 875 N.W.2d at 739. Deremiah was convicted of domestic abuse assault and trespass after breaking in his girlfriend's front door and later punching her in the face multiple times. *Id.* at 730. The facts of *Deremiah* did not show a pattern of misconduct, yet we noted, "When it comes to the application of rule 32:8.4(b) to violent assaults on intimate partners, one assault is one too many." *Id.* at 736. We reviewed the suggested range of sanctions in *Axt* and *Schmidt*, with *Schmidt* suggesting cases of injurious domestic assaults should generally consider a suspension of up to six months before the applications of aggravating and mitigating factors. *Id.* at 738 (first citing *Axt*, 791 N.W.2d 98; and then citing *Schmidt*, 796 N.W.2d 33).

The aggravating factors in *Deremiah* were primarily from the domestic assault itself. *Id.* We then acknowledged Deremiah's case, in stark contrast to Sears's case, involved a number of mitigating factors similar to those considered in *Schmidt*. *Id.* Deremiah had no record of previous discipline after eight years of practice, and he "accepted responsibility for his acts and seem[ed] genuinely remorseful." *Id.* Most importantly, in complete compliance with the terms of his probation, Deremiah engaged in "robust efforts" to deal with his substance abuse. *Id.* At the time of the disciplinary hearing, Deremiah had received his one-year AA sobriety chip and continued to attend AA meetings on a regular basis. *Id.* at 731. He also engaged a therapist for twice a week private counseling and consulted regularly with the Iowa Lawyers Assistance Project. *Id.* Both counselors testified at his hearing that he "was actively engaged in recovery and that his prognosis with respect to managing his alcoholism was good." *Id.* We concluded the proper sanction was suspension indefinitely with no possibility of reinstatement for at least three months. *Id.* at 739. In doing so, we reemphasized a basic rule:

"[D]omestic abuse by lawyers is out-of-bounds conduct that will not be tolerated by this court." *Id.*

Like *Blessum* and *Axt*, this case is more serious than the act of domestic abuse itself. Sears committed domestic abuse assault causing bodily injury less than four months after being placed on probation for his OWI conviction. Almost immediately following his conviction for domestic abuse, Sears violated the terms of his no-contact order, and he repeatedly violated the terms up until seventeen days before the commission's hearing.

What is also striking about this record are the numerous aggravating factors. We must consider both aggravating and mitigating factors. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Willey*, 889 N.W.2d 647, 657 (Iowa 2017). The commission outlined several factors in its sanction recommendation that it considered aggravating, and we agree with its determinations.

As noted, Sears's conduct extended beyond domestic abuse assault and included multiple violations of the court's no-contact order. When multiple violations of disciplinary rules occur, it is an aggravating factor. *Axt*, 791 N.W.2d at 102–03. Relatedly, Sears's failure to learn from his mistakes is an aggravating factor. *Polson*, 569 N.W.2d at 612–13. Following his OWI conviction, Sears was ordered to obtain a substance abuse evaluation and follow through with any recommendations. Sears failed to attend any substance abuse treatment and continued to use alcohol. On September 24, 2018, Sears's probation officer requested he complete a new substance abuse evaluation and begin treatment. Within two weeks of that request, Sears violated the terms of his probation by assaulting Doe, possessing a firearm, and consuming alcohol. At the February 2019 disciplinary hearing, Sears also admitted to consuming

alcohol earlier that very month despite the court order to abstain from alcohol use. It appears whatever efforts Sears undertook to address his substance abuse issues are of recent origin.

Moreover, falsely testifying to the commission is also an aggravating factor. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barnhill,* 885 N.W.2d 408, 424 (Iowa 2016) ("[P]ersistence . . . in perpetuating [a] falsehood is a remarkable aggravating factor." (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGinness,* 884 N.W.2d 456, 466 (Iowa 2014))). Sears's testimony to the commission that he had not violated the no-contact order was found to be false. The commission determined Sears violated the no-contact order by sending two emails to Doe and attempting to call her on three separate occasions. Furthermore, Doe testified credibly, and unrefuted, that on January 30, Sears came to her apartment building and they talked for an hour and a half.

Lastly, we determine a significant aggravating factor to be Sears's ongoing violations of the rules of professional conduct and his demonstrated lack of remorse. The Board instituted this action against Sears on December 14, 2018. On January 30 and February 11, 2019, Doe testified Sears attempted to contact her on her cell phone. Further, Doe testified that on January 30, Sears was waiting outside her residence and they spoke to each other. Further still, shortly after the Board filed its complaint, Sears filed a small claims petition for replevin against Doe on December 31, 2018. The filing of this replevin action, which captioned Sears and his wife against Doe, is troubling for several reasons. First, when the replevin action was filed, the no-contact order had been in effect for nearly three months (October 8, 2018). In addition, the complaint filed in this matter by the Board was initiated just two weeks prior (December

14, 2018). Also troubling is the list of items attached to the replevin action, which includes sex toys in shocking detail.

We now turn to mitigating factors. Sears has no record of prior discipline. We do note, however, that the various conduct at issue in this matter started only five months after Sears was admitted to the Iowa bar and continued for one year up until seventeen days before the commission's hearing. For those reasons, Sears's lack of prior discipline is considered a mitigating factor; however, it does not weigh heavily. *Cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bartley*, 860 N.W.2d 331, 339 (Iowa 2015) (recognizing no prior discipline in fifty-three years of practice a mitigating factor); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bieber*, 824 N.W.2d 514, 516, 527 (Iowa 2012) (noting lack of disciplinary record in thirty-two years of practice as an important mitigating factor).

We determine the significant aggravating factors weigh in favor of a longer period of suspension. Considering all relevant factors we conclude Sears's conduct warrants an indefinite suspension with no possibility of reinstatement for two years. In addition, prior to reinstatement we require Sears to provide the court with (1) a substance abuse evaluation indicating he is fit to practice law and (2) a mental health evaluation by a physician who has signed an affidavit, indicating he is fit to resume practice and has complied with any required care. *See Deremiah*, 875 N.W.2d at 739–40. We further require Sears to provide the court with evidence verifying the successful completion of his probation and evidence verifying he has not been charged with or convicted of criminal offenses with the exception of minor traffic infractions. We also require that any application for reinstatement be set for a hearing in front of this court before the suspension in this case is lifted. Iowa Ct. R. 34.25.

**V. Disposition.**

We suspend Sears's license to practice law in Iowa indefinitely with no possibility of reinstatement for two years. This suspension applies to all facets of the practice of law. *Id.* r. 34.23(3). Sears must comply with Iowa Court Rule 34.24 and notify his clients of the suspension. Prior to reinstatement, Sears must establish that he has not practiced law during the period of his suspension and that he has conformed with the requirements set forth in Iowa Court Rule 34.25. Costs of this action are taxed to Sears pursuant to Iowa Court Rule 36.24(1).

**LICENSE SUSPENDED.**